CANFIELD VS. SMITH and another.

CITY CHARTER: IMPROVEMENT OF STREETS: EQUITY: ESTOPPEL. (1) *Improvement of street at expense of lot owners: How city council gets jurisdiction.* (2, 3) *Right of lot owner: Protection in equity: What facts he may show.* (4) *Rights of owner of certificate of sale.* (6) *Estoppel against lot owner.*

1. Where the charter of a city authorizes the common council to improve a street at the expense of adjoining lots, only upon presentation to it of a *petition* for such improvement signed by the owners of a certain specified proportion of the lot frontage on such street, the presentation of such petition, bearing the names, as signers, of persons *actually owning* the required proportion of such lot frontage, which names have been actually signed by those persons themselves or by their authority, is essential *to give the council jurisdiction.*

2. Where the improvement has been made by the council without such petition, the owner of a lot assessed therefor, and sold for nonpay-

ment of the assessment, is entitled (where he has not *estopped* himself in any way from demanding such relief) to a judgment in equity declaring void the certificate of such sale and restraining the issue of a deed thereon.

3. Where, in such a case, there was a *petition presented* to the council *purporting to be signed* by persons owning the required proportion of frontage on said street, the plaintiff, under a complaint which merely alleges that "no petition was ever presented by the owners of" such proportion of frontage, may show that some of the signers of said petition did not own the amount of frontage claimed by them, and that the names of others appearing as signers were not affixed by themselves nor with their consent.

5. It is no defense, in such a case, for the owner of the tax certificate to show that he was a stranger to the proceedings under which the improvement was made, and ignorant of the defects therein at the time of his purchase.

6. The plaintiff (who was not one of the signers of said petition) is *not estopped* from alleging a want of power in the common council by the fact that, having notice that the work was ordered, he did not interpose the objection until the work was done.

APPEAL from the Circuit Court for *Fond du Lac* County.

Action brought to restrain the clerk of the board of supervisors of said county from issuing a tax deed upon a tax certificate on the sale of the plaintiff's lots for a street improvement tax; said clerk and the holder of the certificate being the defendants.

The complaint sets up, among other things, the order of the common council of the city of Fond du Lac that Arndt Street be paved according to certain plans and specifications; that estimates were made by the surveyor, and the sum of $71.55 was assessed and charged upon the lot of the plaintiff as his proportion of the expense; that the city clerk did not give notice of ten days in the official paper of the city, that occupants or owners should do the said work, or that in default thereof it would be let to the lowest bidder by public contract at the expense of the lots; that the time allowed such occupants by the notice given was unreasonably short; that the contract was let to one Andrew Kinney, and afterwards the street commissioners issued

Canfield vs. Smith and another.

their certificate that he was entitled to $71.55 for work done in front of the plaintiff's lot; that a portion of said street had not in fact been paved at all, and no portion of it was paved according to the plans, but the work was imperfectly performed; that *no petition was ever presented to the common council of said city by the owners of three-fifths of the number of feet frontage in the blocks fronting on said Arndt Street, praying said common council to grade and pave, etc., the said street;* that, the plaintiff not having paid said sum of $71.55, the same was entered on the tax roll of the city, against said ' lot, a portion of which was thereafter sold for said delinquent tax; and that the defendant *Kalk* holds the certificate of such sale.

The answer puts in issue most of the allegations of the complaint, and alleges that the plaintiff, prior to the sale of said lot, had in no way objected to any of the proceedings in the paving of the street, and had given no notice to the common council, or to any officers of the city, that any of said work had been omitted or unskillfully performed.

The only portions of the evidence necessary to be stated here were as follows:

1. There was considerable and conflicting testimony upon the question whether the contract of grading had been unskillfully performed. It appeared that a small portion of the street was not graded and paved, the commissioners not thinking it necessary. 2. The whole number of feet frontage on Arndt Street, as testified by the city surveyor, was 5,010 feet. In the petition on which the order for paving was based, appeared the names of the petitioners, described as "owners' names;" and opposite each was placed the number of his lot and block, and the number of feet frontage; and the whole number of the feet frontage was 3,059. This petition was filed in the city clerk's office July 16, 1869. The plaintiff impeached the petition in several particulars: (1) Opposite the name of P. L. Higbee, one of the petitioners, was marked, "Lots 20 and 21, block 10; frontage, 119 feet." Joseph Place testified as

follows: "In 1869, I lived on lot No. 20, block 10; the front age of this lot is 59 feet; this is my deed for the lot." The plaintiff then offered in evidence a deed from Thos. Leeman to the witness, dated May 9, 1855, conveying said lot; and the evidence was admitted against objection. The witness testified that he had occupied the lot since that time, and still lived on it. On cross examination he testified: "I don't recollect that I ever authorized any one to sign the petition. I wont swear that I did not. T. L. Higbee is my son-in-law, and lives in the neighborhood, on the next lot; we had a talk about signing it, but I paid but little attention to it. I had notice of signing, however, before it was built. The improvement tax [on that lot] has been paid; I paid it at the time." (2) Opposite the name of John B. Denigan, one of the petitioners, was marked, "Lot 14, block 6; frontage 50." The plaintiff introduced in evidence the record of a deed from L. F. French, administrator etc., to John B. Denigan, dated August 6, 1869, purporting to convey the east fifty feet of lot 14, block 6; and also the record of a deed from Denigan and wife, dated the same day, to Pen. Nightengale, conveying the same land. (3.) P. O'Connor, one of the petitioners, with 60 feet frontage, testified that he never signed the petition, but that his son had signed it without his authority or consent.

The ninth finding of fact by the court is in substance the same as the allegation of the complaint above stated: that no petition was ever presented to the common council, etc. And the court held, as matter of law, that the common council had no authority to order the paving of the street, for the reason that no such petition had been presented as was required by the charter, and that the plaintiff was entitled to the relief prayed for. Judgment accordingly; from which defendants appealed.

*Knowles & Babcock*, for appellants, argued that under the practice in equity cases, the complaint should have set forth *facts*, so that the defendants could have had an opportunity of

furnishing evidence to establish the title of those who signed the petition, as was claimed, without right. Otherwise the defendants would have to be prepared to defend the title to forty-two pieces of land described in the petition. If notice had been given, the defendants might perhaps have shown that Higbee was in fact the owner of lot 20, block 10, and might have refuted the evidence of O'Connor, etc. Story's Eq. Pl., §§ 28, 251 and 257; 6 Johns., 565. The plaintiff should be held to strictness in setting forth the facts on which he relies for relief, because the defendants are strangers to the proceedings under which the improvement was made. Sec. 13, ch. 59, P. & L. Laws of 1868; 4 Sandf., 707; 5 id., 558; 1 Van Santv. Eq. Pr., 95. 2. The plaintiff having had full knowledge of all the facts from the first, and having been silent, is now estopped from making the objections raised. 21 Barb., 659. 3. The plaintiff has lost no substantial right, and hence a court of equity ought not to interfere. *Mitchell v. City of Milwaukee,* 18 Wis., 92; *Kneeland v. Milwaukee,* id., 411; 14 id., 618; 31 id., 650. 4. The finding of facts is not warranted by the testimony.

*Gillet & Taylor,* for respondent, argued that the petition did not confer upon the council the authority to act. The son of O'Connor could not act for his father, and confer jurisdiction. *People ex rel. v. Smith,* 45 N. Y., 783; 7 Hill, 177; 1 Seld., 144. Neither could Higbee sign for his father-in-law. 4 Barb., 51. If the petition was not signed by the requisite number, there was no authority to act, and the plaintiff is entitled to the relief sought. 9 Barb., 152; 2 id., 173; 6 id., 49; 20 N. Y., 312; 6 id., 92; *Dean v. City of Madison,* 9 Wis., 402; *Rogers v. Milwaukee,* 13 id., 610; *Jenkins v. Board of Supervisors,* 15 id., 11; *Myrick v. City of La Crosse,* 17 id., 442; *Kneeland v. Milwaukee,* 18 id., 411; *Wells v. Burnham,* 20 id., 112; *Kneeland v. Furlong,* id., 437; *Houghton v. Burnham,* 22 id., 301; *Eldred v. Leahey,* 31 id., 546; *Blount v. City of Janesville,* id., 657. 2. The burden of proof was on the defendant

to show that the common council had jurisdiction; and the petition, without proof, does not tend to establish that fact. 4 Hill, 76; 41 N. Y., 136; 45 id., 783; 3 Lans., 291; *Eldred v. Leahey*, 31 Wis., 554. But the plaintiff has proved affirmatively that the petition was not signed by the requisite owners of frontage. · 3. The tax was void because the whole of the street ordered to be graded was not graded. 22 N. Y., 162; 6 Bosw., 560.

COLE, J.   We are of the opinion that the plaintiff is entitled to the relief demanded in the complaint, upon the ground that no petition was presented to the common council signed by the owners of three-fifths of the number of feet frontage in the block fronting upon the street to be improved, as required by the city charter.   The charter is clear and explicit that the common council shall have no authority to make such an improvement at the expense of the adjoining lots unless such a petition is presented (sec. 3, ch. 13 of the charter as found in ch. 59, P. & L. Laws of 1868); and the court below finds upon the evidence that no such petition was ever presented to the common council.   This was a jurisdictional defect in the proceedings for assessing the expense of the local improvement upon the adjoining property, and rendered the tax certificate in question void.   The cases decided by this court referred to on the brief of counsel for the plaintiff, establish this doctrine beyond controversy.

But it is said that the petition which was presented to the common council represented on its face that the signers owned three-fifths of the frontage ; and that, under the allegations in the complaint, the plaintiff should not have been permitted to show that any one of the persons signing the petition was not the owner of the property set opposite his name, or that the name of an owner had been signed to the petition without authority.   Upon that subject the complaint states and alleges, in substance, that no petition was ever presented to the com-

mon council by the owners of three-fifths of the number of feet of frontage in the blocks fronting on Arndt Street, between Satterlee Street and Main Street, praying the common council to grade, pave and macadamize said Arndt Street as was described in the order of the common council authorizing the improvement; and the plaintiff assumed the burden of showing, and did most conclusively prove, that some of the signers did not own the number of feet front of ground which the petition represented they owned, and that the name of one of the signers was placed upon the petition without authority. The charter provides that each person shall state the number of feet front owned by him and affected by the work asked for in the petition; and the signing of any petition by the owner is to be taken and construed as a release of all claims for damages on the part of every such signer. But the charter does not make the petition evidence of the fact that the signers owned the number of feet represented by them; and proof upon that subject was admissible. But it is further insisted that no evidence could be given of such facts without a particular averment in the complaint, specifically describing the lot or name upon which an issue was made. We think, however, the allegation was sufficient to admit the proof offered. Besides, we suppose the rule applicable to the case to be as stated in *Eldred v. Leahy*, 31 Wis., 546–554, that whenever private rights are to be injuriously affected or taken away by the proceedings of these special and inferior jurisdictions, their power to act in the premises must be shown, when questioned. So also the decision in *Damp v. The Town of Dane*, 29 Wis., 420, where an analogous question was presented under the statute for laying out a highway. The plaintiff took upon himself the *onus* of showing that the facts essential to the jurisdiction of the common council in ordering the work did not exist because of the want of the proper petition. He proved, by the most satisfactory evidence, that lot 20, block 10, having a frontage on the street to be improved of fifty-nine feet, was really owned by the witness

Place, who not only lived upon it in 1869 when the work was ordered, but has occupied it since 1855, although the petition represented that it belonged to the signer, P. L. Higbee. Exclude this lot alone, and the petition would not have the owners of the requisite number of feet frontage to authorize the common council to order the improvement. On the petition, also, was the name of P. O'Connor for sixty feet; and he testified that he neither signed it nor authorized his name to be signed by another. The presumption from the evidence offered likewise is, that the petitioner Denigan had no title to the east fifty feet of lot 14, block 6, when the petition was presented to the common council. These facts indubitably show that the requisite petition to give the common council jurisdiction was never presented, and that consequently the tax certificate was illegally issued. It is no answer to say that the defendant *Kalk*, who purchased at the tax sale, was a stranger to the proceedings under which the improvement was made, was ignorant of all these defects in the proceedings, and is to be protected. We do not know upon what principle this can be done, or how he can be shielded from the consequences which result from a want of jurisdiction on the part of the city authorities. It is said that the plaintiff had notice that the improvement had been ordered, and that he should at once have informed the common council that the petition had not been signed by the legal owners; or that there was fraud connected with it; and not having moved until the work was done and the matter passed out of the control of the city, he should be estopped from interposing these jurisdictional defects. We do not think there is any ground for saying that the plaintiff is estopped from insisting that the common council had no power to order the improvement, by anything he did or failed to do. It was the duty of the common council to know that the requisite petition had been signed and presented before they acted in the matter and attempted to charge the adjoining lots with the expense of the work. The plaintiff is no more estopped from

questioning their jurisdiction, upon the facts, than he would be from questioning the proceedings of a judicial tribunal which should attempt to deprive him of his property in a case where it had no jurisdiction whatever.

Without considering the other questions raised and discussed by counsel on their briefs, we think, for the reasons given, the judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.