FARR *v.* CITY OF DETROIT.

EQUITY—STREET IMPROVEMENT—ASSESSMENT—JURISDICTION.

Complainant, whose property was benefited by street paving to the extent of the assessment, being charged with knowledge that, under the charter, the only method of compensating for the improvement was by an assessment on the property, having had such knowledge of the work as a person living on the street would naturally have, and having made no objection until after the completion of the work, was not entitled to the remedy in equity to arrest the proceedings of the public authorities and set aside the assessment, though the petition for the improvement was not signed by a majority of the frontage, giving the city council jurisdiction to proceed, and though complainant did not acquire the property until the work had been partly done. GRANT, J., dissenting.

Appeal from Wayne; Hosmer, J. Submitted November 4, 1903. (Docket No. 79.) Decided March 29, 1904.

Bill by Merton E. Farr against the city of Detroit and Thomas M. Lucking, receiver of taxes, to restrain the collection of a paving tax. From a decree for complainant, defendants appeal. Reversed.

*Walker & Spalding*, for complainant.

*Timothy E. Tarsney* and *John W. McGrath*, for defendants.

MONTGOMERY, J. In this case, in my view, the question presented is whether this complainant is entitled to the remedy which he seeks in a court of equity. The facts are sufficiently stated in the opinion of Mr. Justice GRANT. The stipulation is that complainant had such knowledge of the work as a person living on said avenue would naturally have. There was testimony tending to show that this property was benefited by the improvement

to the extent of the assessment. In addition to this, complainant was bound to take notice of the public statutes of the State, and that, under the charter of the city of Detroit, the only method of compensating for such improvements was by an assessment upon the property. He stood by, and permitted this work to be done, and now seeks relief in a court of equity. The question is not whether there was a technical estoppel,—a question which my Brother GRANT discusses, as it seems to me, unnecessarily. It may be true that the complainant is not estopped from asserting the invalidity of this tax. But it is quite another thing to say that he is entitled to come into a court of equity to demand of right the interposition of that court to arrest the proceedings of the public authorities. It is a question of remedy.

We think there can be no doubt that, under proper legislative authority, the assessment of complainant's land for the benefit derived from the improvement in question might be made. Lack of authority to make the assessment may be supplied by retrospective legislation when such authority might have been given in the first instance. 1 Cooley, Tax'n (3d Ed.), p. 510. Such a reassessment may be made when the first assessment was irregular, unauthorized, or even made under a defective law. Id. 514.

This question is not a new one in this State. In *Byram* v. *City of Detroit*, 50 Mich. 56 (12 N. W. 912, 14 N. W. 698), the rule was laid down that where a party, under such circumstances, stands by until his property is benefited by the improvement, he will not be permitted to go into a court of equity to be relieved of the tax. The same rule was laid down in *Lundbom* v. *City of Manistee*, 93 Mich. 170 (53 N. W. 161), and followed in *Atwell* v. *Barnes*, 109 Mich. 10 (66 N. W. 583), and *Fitzhugh* v. *City of Bay City*, 109 Mich. 581 (67 N. W. 904). It is impossible to distinguish these cases from the present, unless it be assumed that this complainant, living upon the lot benefited, having such knowledge as a resident on the street would be likely to have, was not bound to know

that an attempt was being made to charge this property with the value of this improvement. This he cannot assert without asserting ignorance of the law, the provisions of which render the property subject to assessment for the improvement.

The decree should be reversed, and the bill dismissed.

MOORE, C. J., and HOOKER, J., concurred with MONTGOMERY, J.

GRANT, J. (*dissenting*). The bill in this case was filed December 22, 1900, to set aside an assessment against complainant's property for paving a portion of a street in the city of Detroit. The charter requires a petition of a majority of the frontage on the part of the street to be paved before the common council is authorized to proceed. Such a petition is a condition precedent to the jurisdiction of the council. The petition in this case was presented to the council June 6, 1899, and, while apparently having a majority of the frontage, did not in fact have it. Apparently, the common council made no investigation to determine this jurisdictional question before proceeding.

The board of public works, on August 29, 1899, reported that it had entered into a contract with one Hanley to do this paving, and asked for the council's approval and confirmation of the same. The council refused to confirm it. On September 19th the board reported another contract, which was more than $4,000 above the first one. This was rejected. On December 5, 1899, the common council passed a resolution directing the board of public works to advertise again for proposals for the paving. Pursuant to this resolution the board reported on February 6, 1900, a contract, which the council approved February 27, 1900. The work was commenced the following spring, and was concluded during the summer. The assessment roll was transmitted by the board of assessors to the common council September 25, 1900, and approved and confirmed. When that roll was made, and what opportunities, if any, were given the taxpayers to make objections, do not appear.

After the commencement of this suit, and before the hearing thereof, that assessment roll was rescinded by the common council, and another assessment roll, identical in every particular, except in name, with the former roll, was made, and confirmed by the common council on the 8th day of October, 1901, whereby the same assessment was made against the complainant's lands. Complainant purchased the property in June, 1900, after the contract was let and the paving partly done.

The ordinance and contract provided that eight hours should be a day's work; that $1.50 should be the minimum day's pay for all labor; that no alien or nonresident of the city should be employed by the contractor; and that, for 10 years after the acceptance of the pavement, the contractor should keep it in good condition and repair, so that neither the city nor the property owners should be at any expense whatever, and that the pavement should, at the expiration of 10 years, be in good condition and repair. The above provisions of the ordinance were not inserted in the specifications nor in the advertisement for bids upon which bids for the contract for this work were made and received, but were inserted in the contract, and the bids and contract were made with reference to them.

Among the agreed facts is also the following:

"That complainant lived on Grummond avenue when the petition was presented to the common council, when said street was ordered paved, when the contract was let, and up to the time that the bill in the cause was filed, and had such knowledge of the said work as a person living on said avenue would naturally have."

The case was heard upon pleadings and proofs in open court, and a decree entered for complainant, restraining the collection of the tax.

The petition, not containing a majority of the frontage, conferred upon the common council no authority or jurisdiction to proceed. We have, then, an attempt to make a municipal public improvement, and to assess the tax therefor upon abutting owners, when the proceeding is

void *ab initio* for lack of jurisdiction. *Auditor General*
v. *Fisher*, 84 Mich. 128 ( 47 N. W. 574 ), is on all fours
with this case, and is conclusive of the law controlling it.
The township board in that case decided that the petition
was signed by a majority of the property owners. In fact,
it was not. The court held that the township board ob-
tained no jurisdiction in the case, and set aside the tax.
It was also there insisted that the finding of the township
board that a majority of the property owners had signed
the petition was conclusive. It was held, in the absence
of a statutory provision making the action of the township
board conclusive, that such finding is not conclusive; that
that fact could be inquired into by the court, and could be
shown as a defense to an action to collect the assessment,
—citing authorities. To the same effect are *Mulligan* v.
*Smith*, 59 Cal. 206, *Canfield* v. *Smith*, 34 Wis. 381, and
*Ogden City* v. *Armstrong*, 168 U. S. 224 ( 18 Sup. Ct.
98 ). In the *Fisher Case* the owner of the land took no
steps to contest the validity of the tax until he was sum-
moned into court in the usual suit brought by the auditor
general to foreclose the liens upon lands delinquent for
nonpayment of taxes. In the present case the owner has
not waited for that suit, but has filed his bill to restrain
the collection. The only difference between the two cases
lies in the remedy.

The assessment and tax are void for another reason.
The provisions of the contract limiting the hours of work,
prescribing the rate of pay, and prohibiting the employ-
ment of alien and nonresident labor are absolutely void.
They naturally tend to increase the cost of these improve-
ments to the taxpayers, and to limit, and in some in-
stances to prohibit, competition. A contractor living in
the city, and employing only residents of the city, would
not only have the advantage over a nonresident bidder,
who employed nonresident workmen, but it would nat-
urally prevent a nonresident or a resident contractor who
employs nonresident labor from bidding at all. Besides,

it is no legal concern of the common council how many hours contractors and their employés may agree to work, or where they may reside, or what pay they may agree upon. These are matters which, under the defendant's charter, rest entirely with the employer and employé. The charter requires contracts to be let to the lowest responsible bidder. The council has no power to attach conditions which will deprive the taxpayers of the right to such contracts. Whether the legislature can confer upon the common council the power to impose any of these conditions is a question not before us. It is sufficient in this case to say that no such right is conferred. The following authorities condemn such provisions as void: *City of Atlanta* v. *Stein,* 111 Ga. 789 (36 S. E. 932, 51 L. R. A. 335); *Adams* v. *Brenan,* 177 Ill. 194 (52 N. E. 314, 42 L. R. A. 718, 69 Am. St. Rep. 222); *Holden* v. *City of Alton,* 179 Ill. 318 (53 N. E. 556); *Fiske* v. *People,* 188 Ill. 206 (58 N. E. 985, 52 L. R. A. 291); *City of Cleveland* v. *Construction Co.,* 67 Ohio St. 197 (65 N. E. 885, 59 L. R. A. 775).

The learned counsel for the city do not contend that the city obtained jurisdiction, or that the contract is valid; neither do they contend that complainant is estopped to assert these jurisdictional defects when he is made defendant in a suit. The sole defense made in the answer and brief is that the pavement is a substantial improvement, that his land is benefited to the extent of the assessment, and that he made no protest against the improvement, and " ought not now to be allowed to come into a court of equity and be relieved from the payment of said assessment." In other words, it is insisted that equity closes its doors to him when he seeks to enter as a complainant, but opens them to his defense when he is brought in as a defendant. That he is not estopped in the proper suit to assert the absolute invalidity of the proceedings and the contract for want of jurisdiction is established by a long line of decisions of this and other courts. *Steckert* v. *City of East Saginaw,* 22 Mich. 104; *Twiss* v. *City of Port*

*Huron*, 63 Mich. 528 (30 N. W. 177); *Whitney* v. *City of Port Huron*, 88 Mich. 268 (50 N. W. 316, 26 Am. St. Rep. 291); *Woodmere Cemetery Ass'n* v. *Township of Springwells*, 130 Mich. 466 (90 N. W. 277); *City of Pontiac* v. *Axford*, 49 Mich. 69 (12 N. W. 914); *In re Sharp*, 56 N. Y. 257 (15 Am. Rep. 415); *Schumm* v. *Seymour*, 24 N. J. Eq. 143; *Canfield* v. *Smith*, 34 Wis. 381; *Starr* v. *City of Burlington*, 45 Iowa, 87; *Strout* v. *City of Portland*, 26 Or. 294 (38 Pac. 126); *Coggeshall* v. *City of Des Moines*, 78 Iowa, 235 (41 N. W. 617, 42 N. W. 650); *Mulligan* v. *Smith*, 59 Cal. 206; *Tone* v. *City of Columbus*, 39 Ohio St. 281 (48 Am. Rep. 438).

In *Canfield* v. *Smith*—a case like this in its facts—the court say:

"The plaintiff is no more estopped from questioning their jurisdiction, upon the facts, than he would be from questioning the proceedings of a judicial tribunal which should attempt to deprive him of his property in a case where it had no jurisdiction."

Want of jurisdiction in commencing proceedings and instituting suits at law or in chancery cannot be cured or waived by mere silence.

In *Auditor General* v. *Railway Co.*, 116 Mich. 122 (74 N. W. 505), we held that the curative provision of the tax law did not relieve against defects which go to the jurisdiction of the body authorizing the levy. The same is held in *Township of Caledonia* v. *Rose*, 94 Mich. 216 (53 N. W. 927).

There is a class of cases holding that, where the proceedings are void, those who invoke the law by petition or by expressly sanctioning it are estopped. *Motz* v. *City of Detroit*, 18 Mich. 494; *Atwell* v. *Barnes*, 109 Mich. 10 (66 N. W. 583); *Tone* v. *City of Columbus, supra.* See, also, *Hall* v. *Slaybaugh*, 69 Mich. 484 (37 N. W. 545).

In *Walker* v. *City of Ann Arbor*, 118 Mich. 251 (76 N. W. 394), we held that jurisdictional defects could not be ignored without doing violence to established principles,

where it appeared that the complainant had no knowledge of the proceedings until after they were taken.

The sole question, therefore, is, Has the conduct of the complainant been so unclean and unjust that equity closes its doors to him when seeking relief from a tax absolutely void for want of jurisdiction? He purchased the land after the entire proceedings were completed, the contract let, and the work had proceeded to partial completion. It is not shown that his grantor had any knowledge of the proceedings, or that he even lived in the city. He is not, therefore, chargeable with knowledge on the part of his grantor. Complainant alleged and proved that the common council obtained no jurisdiction whatever, and that the contract contained provisions which are *ultra vires*, and rendered it void. He thus made a case entitling him to the usual relief in equity, unless he was guilty of conduct which estopped him to seek that relief. The burden was then cast upon the defendant to show that complainant came into court with unclean hands. It recognized this burden in its answer. It failed to produce any evidence to support it, except that complainant lived on the street, and had such knowledge as such a person would naturally have. In the purchase of this property, was not the complainant entitled to the presumption that the common council had acquired jurisdiction to perform this work, and that they had made a valid contract?

It is said in *Strout* v. *City of Portland, supra,* where the distinction between a case where jurisdiction has been acquired and where it has not been acquired is recognized:

"The property owner is not the legal adviser of the common council, which usually has an attorney for this purpose. He is not required to interfere with the mode adopted to acquire jurisdiction; nor is he expected to object or protest after the proper initiatory steps have been taken, except to the mode or manner of the improvement, or some intermediate order or proceeding of the common council which injuriously affects his property,"—citing with approval *Canfield* v. *Smith, supra.*

Whether the complainant lived on the portion of the street where the work was progressing, or at a distance from it, or whether he passed the improvement during that time, we are not informed. He was not chargeable with notice of the contents of this contract. It was not of record. Neither was he chargeable with notice that the common council acquired no jurisdiction by the petition. There is nothing in this record to show that he knew under what provisions or conditions or contract this work was done. There is no evidence that any assessment was made prior to the last of September, 1900, or that complainant or his grantor had any opportunity to appear and protest at any stage of the proceedings. He filed this bill within three months thereafter. The city has not been prejudiced by the delay.

We have in several cases denied the taxpayer the right to bring his suit in equity where he had full knowledge of the facts, and in many cases participated in them, and had ample opportunity to contest, had he chosen to do so, and yet stood by until he had reaped the advantage of the improvement. Some of these are drain cases, where the statute provides a special remedy, and fixes a limitation to the right to bring the action. We have also held that laches may defeat the right to maintain such a bill. *Tuller* v. *City of Detroit*, 126 Mich. 606 (85 N. W. 1080); *Auditor General* v. *Melze*, 124 Mich. 285 (82 N. W. 886); *Moore* v. *McIntyre*, 110 Mich. 237 (68 N. W. 130); *Lundbom* v. *City of Manistee*, 93 Mich. 170 (53 N. W. 161); *Township of Walker* v. *Thomas*, 123 Mich. 290 (82 N. W. 48). Many other cases might be cited. In my opinion, they do not control this case, where the entire proceedings were complete and the work was partly done before complainant obtained any interest in the property, or did or could do anything to estop him from seeking relief in a court of equity. Whether this denial to a party of the right to seek affirmative relief in equity applies to cases absolutely void for want of jurisdiction, or only to irregularities which would be held fatal if prompt action were

taken, I find it unnecessary to determine.    Chief Justice
COOLEY, in the case of *Albany & Boston Mining Co.* v.
*Auditor General*, 37 Mich. 391, said:   "Equity will not
interfere to restrain the collection of the public revenue
for mere irregularities."

It is insisted, however, that the evidence shows that
complainant's property has been benefited to the full
amount of the cost of the pavement assessed against him,
and that, therefore, he must pay it, under Act No. 472,
Local Acts 1901.    This provision will be found on page
710.   The act provides that, in any proceedings thereto-
fore or thereafter made for the purpose of paving any
street, no assessment shall be vacated or held invalid by
any court on account of any defect or omission in the pro-
ceedings, unless the person complaining thereof shall be re-
quired to pay such sum or sums as said court may find the
property shall have been benefited by the making of such
improvement.   This provision cannot apply to cases where
the proceedings are absolutely void for want of jurisdic-
tion.   It might as well be claimed that the council could,
of its own motion, order a street paved, and then say to
the taxpayers, "You must pay it, for your property is
benefited to that amount."   Whether this act would apply
to cases prior to its enactment is doubtful, but, as it is not
argued, we do not pass upon it.

Decree should be affirmed.

CARPENTER, J., took no part in the decision.