(August 4, 1922.)

FRANK E. HEMENWAY, Appellant, v. C. W. CRANEY, A. B. ANNIS and COURT M. SARGENT, as Commissioners of Drainage District No. 2 of Benewah County, Idaho, C. G. CROMWELL, Clerk of the District Court, and Ex-officio Auditor of Benewah County, Idaho, VERA FULLER, County Treasurer and Ex-officio Tax Collector of the County of Benewah, Idaho, Respondents.

[208 Pac. 407.]

DRAINAGE DISTRICTS—ASSESSMENT FOR IMPROVEMENTS—INJUNCTION—ESTOPPEL.

One who has full knowledge of the financial affairs of a drainage district and of the manner in which its business is being carried on, who knows that an improvement that is being constructed is costing an amount greatly in excess of the original estimate and that the additional expense must be discharged by a tax upon his and other lands of the district and who acquiesces in and requests and encourages such additional expenditures, knowing that no steps have been taken to submit to the district court an additional estimate of such expenditures, is estopped to question the validity of an assessment to cover such additional expenditures after the improvement is completed and his land has been greatly benefited thereby.

APPEAL from the District Court of the Eighth Judicial District, for Benewah County. Hon. W. F. McNaughton, Judge.

Action to restrain collection of assessment levied by Commissioners of Drainage District. Judgment for defendants. *Affirmed.*

Potts & Wernette, for Appellant.

The assessments were void because they were made without notice to the appellant or an opportunity for him to be heard. (*Ireland v. Rochester,* 51 Barb. (N. Y.) 414; *Londoner v. Denver,* 210 U. S. 373, 28 Sup. Ct. 708, 52 L. ed. 1103; *Denver v. State Investment Co.,* 49 Colo. 244, 112 Pac. 789, 33 L. R. A., N. S., 395; *Arnold v. Knoxville,* 115 Tenn. 195, 90 S. W. 469, 3 L. R. A., N. S., 837; *Adams v. Shelbyville,* 154 Ind. 467, 77 Am. St. 484, 57 N. E. 114, 49 L. R. A. 797; *Violett v. Alexandria,* 92 Va. 561, 53 Am. St. 825, 23 S. E. 909, 31 L. R. A. 382; *Hagar v. Reclamation Dist. No. 108,* 111 U. S. 701, 4 Sup. Ct. 663, 28 L. ed. 569; *Argyle v. Johnson,* 39 Utah, 500, 118 Pac. 487; *Lower Kings River Reclamation Dist. v. Phillips,* 108 Cal. 306, 39 Pac. 630, 41 Pac. 335.)

Appellant is not estopped to question the legality of the assessments. (*Birdseye v. Clyde,* 61 Ohio St. 27, 55 N. E. 169; 2 Cooley on Taxation, 3d ed., p. 1519; *Wright v. Thomas,* 26 Ohio St. 346; *Lewis v. Symmes,* 61 Ohio St. 471, 76 Am. St. 428, 56 N. E. 194; *Morse v. Omaha,* 67 Neb. 426, 93 N. W. 734; *Harmon v. City of Omaha,* 53 Neb. 164, 73 N. W. 671; *Buckley v. Tacoma,* 9 Wash. 253, 37 Pac. 441; *St. Joseph v. Dillon,* 61 Mo. App. 317; *Tinsman v. Monroe,* 90 Mich. 382, 51 N. W. 460; *Scudder v. Jones,* 134 Ind. 547, 32 N. E. 221; *Birdseye v. Clyde,* 61 Ohio St. 27, 55 N. E. 169; *Crawfordsville Music Hall Assn. v. Clements,* 12 Ind. App. 464, 39 N. E. 540, 40 N. E. 752; *Keese v. Denver,* 10 Colo. 112, 15 Pac. 825; *Newton County etc. Co. v. Nofsinger,* 43 Ind. 566; *Boatman v. Macy,* 82 Ind. 490.)

"A plea of estoppel has been sustained only where the property owner has had notice of an intention to tax his property for a portion of the cost of constructing the im-

provement, and an opportunity to present objections thereto.'' (*Troyer v. Dyar,* 102 Ind. 396, 1 N. E. 728; *Hager v. City of Burlington,* 42 Iowa, 661; *Spaulding v. Baxter,* 25 Ind. App. 485, 58 N. E. 551; *Pennsylvania Co. v. Cole,* 132 Fed. 668.)

''Where an assessment for a public improvement is void by reason of any inherent defect, either of jurisdiction or of procedure, the property owner cannot become estopped to deny its validity.'' (*City of Birmingham v. Wills,* 178 Ala. 198, Ann. Cas. 1915B, 746, 59 So. 173; *Hutchinson v. City of Omaha,* 52 Neb. 345, 72 N. W. 218; *Hall v. Moore,* 3 Neb. (Unof.) 574, 92 N. W. 294; *Coggeshall v. City of Des Moines,* 78 Iowa, 235, 41 N. W. 617, 42 N. W. 650; *App v. Stockton,* 61 N. J. L. 520, 39 Atl. 921; *Strout v. Portland,* 26 Or. 294, 38 Pac. 126; *Smith v. Minto,* 30 Or. 351, 48 Pac. 166; *Fox v. Middlesborough Town Co.,* 96 Ky. 262, 28 S. W. 776; *Strout v. Portland,* 26 Or. 294, 38 Pac. 126; *Dyer v. City of Bandon,* 68 Or. 406, 136 Pac. 652; *Jones v. City of Salem,* 63 Or. 126, 123 Pac. 1096; *Edmonds Land Co. v. City of Edmonds,* 66 Wash. 201, 119 Pac. 192; *Smith v. Minto,* 30 Or. 351, 48 Pac. 166.)

Even if a party is estopped as to one portion of the proceedings, he is not estopped as to others. (*Consolidated etc. Min. Co. v. Struthers,* 41 Mont. 551, 111 Pac. 150; McQuillin, Mun. Corp., secs. 2120, 4515; *City of New Whatcom v. Bellingham Bay Imp. Co.,* 10 Wash. 378, 38 Pac. 1024; 28 Cyc 1141, 1149; *Barber Asphalt Paving Co. v. Watt,* 51 La. Ann. 1345, 26 So. 70, 72.)

Ezra R. Whitla and W. D. Keeton, for Respondents.

It is the duty of the property owner to keep informed regarding improvement of his property. (*Boatman v. Miles,* 27 Wyo. 481, 199 Pac. 933; *City of Elkhart v. Wickwire,* 121 Ind. 331, 22 N. E. 342; *City of Ardmore v. Appollos,* 62 Okl. 232, 162 Pac. 211; *Erickson v. Cass County,* 11 N. D. 494, 92 N. W. 841.)

One who accepts benefits cannot repudiate obligation to pay. (*Edwards & Walsh Const. Co. v. Jasper Co.*, 117 Iowa, 365, 94 Am. St. 301, 90 N. W. 1006; *Byram v. City of Detroit*, 50 Mich. 56, 12 N. W. 912, 14 N. W. 698; *Gibson v. Owens*, 115 Mo. 258, 21 S. W. 1107; *Ross v. Stackhouse*, 114 Ind. 200, 16 N. E. 501; *Atwell v. Barnes*, 109 Mich. 10, 66 N. W. 583; *Ritchie v. City of South Topeka*, 38 Kan. 368, 16 Pac. 332; *People v. Many*, 89 Hun, 138, 35 N. Y. Supp. 78; *Powers v. Town of New Haven*, 120 Ind. 185, 21 N. E. 1083; *State v. Johnson*, 111 Minn. 255, 126 N. W. 1074, 1075.)

Property owner is estopped where he stands by and sees improvements made. (*Fitzhugh v. City of Bay City*, 109 Mich. 581, 67 N. W. 904; *Farr v. City of Detroit*, 136 Mich. 200, 99 N. W. 19; *Brewer v. City of Elizabeth*, 66 N. J. L. 547, 49 Atl. 480; *McKnight v. City of Pittsburgh*, 91 Pa. St. 273; *Pabst Brewing Co. v. City of Milwaukee*, 126 Wis. 110, 105 N. W. 563; *Wingate v. City of Astoria*, 39 Or. 603, 65 Pac. 982; *Gibson v. Owens, supra; Busenbark v. Clements*, 22 Ind. App. 557, 53 N. E. 665; *Board of Commissioners v. Plotner*, 149 Ind. 116, 48 N. E. 635.)

The property owner must act promptly and pursue his remedies at once or he will be denied relief where he receives benefits. (*Partee v. Cleveland T. Paving Co.* (Okl.), 172 Pac. 945; *City of Muskogee v. Rambo*, 40 Okl. 672, 138 Pac. 567; *Damron v. City of Huntington*, 82 W. Va. 401, 96 S. E. 53, 9 A. L. R. 623; Hamilton on Special Assessments, par. 732; *Palmer v. Stumph*, 29 Ind. 329; *City of Bartlesville v. Holm*, 40 Okl. 467, 139 Pac. 273, 9 A. L. R. 627; *State v. City of Jersey City*, 52 N. J. L. 490, 19 Atl. 1096.

Where expenditure exceeds estimate the property owner must act at once. (Secs. 4504, 4506, 4512, 4513, C. S.)

The appellant had his day in court to be heard upon the question as to the proportion his land should pay, and the benefits, if any, which it would receive.

The question of notice is not in the case, as the notice upon the assessment of benefits was given and the assessment of benefits was determined. The whole matter of the levy of subsequent taxes after the original assessment is purely mathematical and no discretion is given the commissioners in saying what proportion any land owner shall pay, as that has been settled by a final decree of the court. (*Gillette v. Denver*, 21 Fed. 822.)

DUNN, J.—This action was brought by appellant to restrain the collection by respondents of the sum of $3,950.94, which respondents claimed to be due from appellant under an assessment made by the commissioners of Drainage District No. 2 of Benewah county, Idaho, against the lands of appellant to take up certain outstanding warrants issued by said district and to quiet title to said lands against the claim of lien for said amount asserted by said drainage district. Of this amount appellant claims $3,415.69 to have been levied without legal authority. A temporary injunction was granted by the trial court restraining the collection of any portion of said sum except the amount due from appellant for the payment of interest on bonds, and twenty per cent of the remainder of said assessment. Thereafter an amended and supplemental complaint was filed by appellant attacking an assessment levied by said drainage district commissioners in the year 1919 by which it was attempted to collect from appellant the sum of $3,196.25, in addition to the amount claimed in the original complaint. Of this latter assessment appellant claimed $2,661 to have been levied without legal authority and the court restrained the collection of any part of said assessment levied in the year 1919 except $535.25 for interest and twenty per cent of the remainder of said assessment. The case was tried before the court without a jury, and after making findings of fact and conclusions of law the court entered judgment for the respondents sustaining the validity of the assessments made in the years 1918 and 1919, but denying the

right of the drainage district to collect more than twenty per cent of such assessments in any one year From this judgment appeal was taken.

Drainage District No. 2 of Benewah county, Idaho, was organized on April 17, 1916. It contains a little less than 500 acres of land, all of which was owned at the time of the organization of the district by Fred Russell, H. H. Hibbard, George Murphy, E. M. Parker and Bertha Urbach. Some time after the organization of the district a corporation was formed under name of the Northern Securities Company, which acquired the land owned by Parker and Hibbard and nearly all of that owned by Murphy, and in October, 1917, appellant entered into a contract to purchase the land of Bertha Urbach, which purchase was completed in the year 1920. Thus appellant Murphy and said Securities Company at the beginning of this action owned all the land in the district, appellant holding a trifle over one-fourth of the entire area.

The commissioners appointed by the court made an assessment against the lands of the district of $29,683.80, which was approved by the district court, and thereafter an issue of bonds for said amount was authorized by said district. The bonds were sold, and the work of diking and ditching said lands was begun. In the fall of 1917, when the work of reclaiming the lands of the district was, roughly speaking, about one-half done, the money derived from the bond issue was exhausted and the drainage commissioners continued the work, raising the money therefor by issuing the warrants of the district, which were registered with the county treasurer, there being no funds of the district with which to pay them. About the last of the year 1917 and the first of the year 1918 an unusual flood was experienced in the valley of the St. Joe River, the water rising at that time to a higher point than was ever known before at that season of the year. This flood resulted in temporarily stopping the work and doing more or less damage to the dikes already built. After the high water subsided the

work of diking and ditching was resumed and finally completed. It is impossible to tell from the record exactly when the work was finished, but it was sufficiently completed by June, 1918, to keep out the high water that came at that time and to make it possible to cultivate some portions of the land within the district.

The attempt to levy the assessment for 1918 was made by filing with the county auditor of Benewah county on August 7, 1918, a certificate as follows, and that for 1919 by a similar certificate:

"Certification of the Estimate and Cost of Maintenance and Necessary Repairs in Drainage District No. ——2—— for the year 1919.

"To the County Auditor, of the County of Benewah, State of Idaho:

"IT IS HEREBY CERTIFIED, By the Board of Drainage Commissioners of Drainage District No. *Two* of Benewah County, Idaho, that the amount of the estimate of the cost of maintenance of the drainage system constructed in said district, including the cost of making any necessary repairs that it may become necessary to make in the maintenance of such system int. on bonded indebtedness $2077.88, and outstanding warrants $13196.75 during the year 1919, is the sum of *Fifteen Thousand Two Hundred Seventy-four & 63/100* Dollars.

"And in accordance with Section 23, Chap. 16, 1913 Session Laws, of the State of Idaho, you are hereby instructed and required to apportion such amount, to-wit, the sum of *Fifteen Thousand Two Hundred Seventy-four and 63/100* Dollars, to the land owners in such district benefited by the improvement therein, in the proportion of *Thirty-one ($31.00)* Dollars per acre (which proportion is the same proportion in which the maximum benefits were originally assessed) and to add such amount to the general taxes of such land owners and collect it therewith.

"Dated this *seventh* day of *August,* 1918."

36 Idaho.—2

This action to restrain the collection of said assessment except that part for interest was commenced December 30, 1918. Appellant attacks as illegal the entire levy made in the year 1918 and 1919, except that part which was made for interest. In other words, he attacks all of that part of said levies made for the purpose of taking up the warrants issued by said district in payment of construction work carried on after the exhaustion of the money derived from the bond issue. Respondents rely mainly upon estoppel to defeat the action brought by appellant, it being claimed by them that he was familiar with the financial condition of the district and at or about the time he contracted to purchase the land of Bertha Urbach; knew that the funds from the bond issue were exhausted; that warrants were being issued by the drainage district for the completion of the work; that he and one Neumeister, shortly after appellant purchased the Urbach land, took a contract from said district on the construction work that was being carried on, performed the same and received warrants of said district therefor and that, having full knowledge of the financial condition of the district and the manner in which its affairs were being handled by the drainage commission, he not only acquiesced in their conduct of the affairs of said district in completing the construction work, but repeatedly urged said commissioners to hasten the work of construction, never at any time offering any objections whatever to the prosecution of the work in the manner in which it was being carried on by said commissioners.

We think this point is decisive of the case. All the commissioners and the engineer in charge of the work, as well as other witnesses, testified to conversations with appellant at or about the time the funds from the bond issue were exhausted and during the time the work was being carried on by the issuance of warrants, which conversations strongly support the contention of respondents that appellant was fully acquainted with all of the affairs of the district. Appellant claims that at the time he purchased the Urbach

land he was aware of the bond issue, which amounted to about $60 per acre against all of the land of the district, but that he did not know that said funds were exhausted, and was not at any time acquainted with the affairs of the district or cognizant of the fact that the commissioners were issuing warrants without authority of law. After hearing the testimony of these witnesses the trial court found that said warrants "were issued by the said drainage commissioners with the knowledge and acquiescence of the plaintiff in the work which was being done for which they were issued"; that "said warrants were and are legal obligations of said district, being for improvements on said district acquiesced in and incurred with full knowledge of the financial affairs of the district by all of the land owners in the district"; that said assessment was made "for the purpose of taking up outstanding warrants which had been issued in said amount for necessary construction, necessary repairs, and maintenance of the works of said district, which expenditure had been made by the drainage commissioners with full knowledge, consent and acquiescence of the plaintiff and all the land owners within the district"; that "said amounts were and are legal obligations of said district, acquiesced in and encouraged with full knowledge of the financial affairs of the district by all of the land owners in the district, including the plaintiff"; that "the said plaintiff encouraged and requested said commissioners to expend all of said sums in excess of the original estimate with full knowledge that the prices of labor and material had greatly increased and with full knowledge that the freshet of the winter of 1917 and 1918 had greatly increased the cost of the proposed work and with full knowledge that the cost of proceeding with the works, as was done by the commissioners, would greatly exceed the original estimate, and would equal the amount of the original estimate plus the outstanding warrants; that plaintiff's lands have been benefited to the full extent of the expenditure by reason of the improvements made by said drainage district and, regard-

less of irregularities in the matter of making and spreading said assessments, plaintiff should be estopped from questioning or denying the right of making the assessment therefor, but is entitled to have said assessments spread over the number of years contemplated by statutes of Idaho for payment of same''; that ''the certificates filed by the drainage commissioners with the county auditor were made without notice to plaintiff according opportunity for him to be heard, and there was no meeting or notice of meeting of the land owners in the district authorizing the outstanding warrants which were issued in excess of the original estimate in order to maintain and complete the works of the district, but the court finds that the plaintiff was informed of the additional cost which the completion of the works after the expenditure of the original bond issue would incur, but that with full knowledge of the work being carried on and the cost thereof and of the financial condition of the district, said plaintiff urged and requested the commissioners to proceed with the construction of the works''; that ''at the time said drainage district was organized, lands of said district were owned in severalty by M. C. Parker, R. H. Hibbard, George Murphy and Bertha Urbach, and that said district was formed by them for the purpose of preventing the flood waters of the St. Joe River from overflowing the same and to pump the water therefrom in order that said lands might be used for agricultural purposes. That said lands were subject to annual overflows and during ordinary years the water remains on the lands for such a length of time that it could not be cultivated, and the lands in their natural state prior to the organization of the drainage district were worth from $25 to $35 per acre. That the purpose of the organization of said drainage district and constructing works proposed was to prevent the flood waters from coming on to said lands, and by means of a pumping plant to remove the surplus waters therefrom. That the original plan of said district, as approved by the court, contemplated attaching a dike along the St. Joe River to another dike

extending along the eastern boundary of said lands and known as the Kroll dike, which inclosed the land lying adjacent to the lands within said district, ,and by thence running said dike around the river and connecting the same to the grade of the railroad of the Chicago, Milwaukee & St. Paul Railroad Company's and building the same to an elevation of 2,142 feet above mean sea level. That the estimate of the aforesaid work was made in the year 1916. That in the spring of 1917, when the owners desired to proceed with said work, all the owners of lands in the district knew that by reason of the war conditions, all materials to be used in said work had greatly increased in cost, namely, from 50 to 100 per cent, and that the labor necessary to be used in connection with doing said work had greatly increased in cost, but all the land owners agreed and insisted upon the work being proceeded with at once by day labor, and the work was begun and pushed as rapidly as possible, at the instance and request of the land owners with the knowledge that the cost would be far in excess of the original estimate and approximately the amount of the original indebtedness, plus the amount of outstanding warrants. That at the time plaintiff purchased the lands of Bertha Urbach, all moneys received from the sale of bonds had been expended and warrants were then being registered against said district, which registered warrants were a matter of public record. That the plaintiff knew that said money was either all expended or practically expended at the time he purchased and knew that the dike along the bank of the St. Joe River had not been completed further than the west boundary line of the land of plaintiff. That plaintiff himself took a contract, with another party as partner, to do a portion of the work completing the dike and was paid therefor in the month of December, 1917, in warrants amounting to $525, which warrants at the time of the commencement of this action, were still outstanding and were part of the warrants for which the assessments complained of by the plaintiff were levied, which warrants had

been cashed at one of the banks in St. Maries. That part of the excess cost of constructing the works over and above the original estimate was due to material changes which it was found later to be necessary to make, but was mainly due to the enhanced cost of material and labor and the unfavorable conditions occasioned by the flood in the St. Joe River in the winter of 1917 and 1918''; that ''the lands of the plaintiff have been increased in value by the construction of the works of the drainage district from the sum of $35 per acre to the sum in excess of $35 per acre plus the cost of said improvements, and that the plaintiff had received, as benefits accruing to his land, an amount more than equal to the full costs of the said improvements.''

An examination of the record satisfies us that while the evidence is conflicting there is sufficient evidence to sustain these findings of the trial judge, and that appellant is estopped to claim that said assessments to take up said outstanding warrants do not constitute a valid lien against his land within said district.

C. S., sec. 4522, reads as follows: ''In any case where the work set out in the plan for drainage as provided in this title, is found insufficient, a new estimate of benefits may be made, based on the additional work proposed, and additional assessments may be made on the lands benefited in conformity with the procedure hereinbefore provided, and the lands in said district, or any part of such lands, shall be assessed in proportion to the benefits estimated as accruing to such lands because of such additional work and improvements.''

It is clear that when the commissioners of said district became aware of the fact that the funds raised by the bond issue were about to be exhausted and that a great amount of work was yet to be done they should have proceeded to levy an additional assessment in the manner provided by said section 4522. As we understand appellant's position he is seeking to avoid payment of the proportion of the additional expense assessed against his land upon the sole

ground that the drainage commissioners attempted to make said assessment a lien upon his land without submitting it first to the district court and, after notice to all interested parties, obtaining confirmation of said assessment by the court. From the findings of the court, which are sustained by the evidence, it is clear that appellant had ample opportunity at the beginning of the expenditures of which he complains to go into court and compel the commissioners to first submit another estimate of the proposed expenditures to the court and obtain its confirmation before proceeding with the additional work. There can be no doubt that he knew of the uncompleted condition of the work and that there was yet to be built along the St. Joe River 1,000 or 1,200 feet of dike in order to keep the high water out of the district, and that without such construction the work already done would be entirely worthless and a total loss to the land owners of the district. He knew that he had been served with no notice of proceedings to make an additional levy, and if he proposed to resist the collection of any portion of the additional expense by assessments on his land he had no right to wait until the improvement had been completed and all of the benefits to be derived therefrom secured by himself before attacking the expenditure. He knew the unfinished condition of the improvements that were being made in the drainage district and if he knew, as the court found, that the funds raised by the bond issue had been exhausted or were about to be exhausted he must have known that a further heavy assessment must be made against the lands of the district to complete the improvements. Even though the commissioners neglected to submit the second assessment to the district court for approval it would be manifestly unfair to the remaining land owners of the district to permit appellant, with all the information that the trial court found him to have had, to escape payment of a fair proportion of this expense which so greatly enhanced the value of his land. In McQuillin's Municipal Corporations, sec. 2120, page 4517, the author says: "Fi-

nally, a property owner will not be estopped from contesting the validity of the assessment by remaining silent while the improvement and assessment is being made unless he knew (1) that it was being made; (2) that the public authorities intended to assess the cost thereof or some part of it upon his property; (3) that the infirmity or defect in the proceedings, which he is to be estopped from asserting, existed; and (4) it must appear that some special benefit accrued to his property.''

Under this rule appellant should be held for the assessment against his lands because (1) he knew the improvement was being made. (2) He knew there was no way by which the cost could be paid except by assessing his land. (3) He knew that no steps had been taken by the drainage commissioners to bring an additional assessment before the district court, and (4) it is conclusively shown by the record that his property was greatly benefited by the expenditure.

We shall not attempt a review of the numerous authorities sustaining the contention of respondents in such cases as the one at bar. While they are not unanimous in support of respondents' position, we are of the opinion that the decided weight of authority is that way, and that it is supported by both reason and justice. The case of *Erickson v. Cass County*, 11 N. D. 494, 92 N. W. 841, was one in which 52 parties brought an action to enjoin the collection of assessments made against their lands for the construction of a drainage ditch. In denying the relief sought the court said: ''The facts of this case are such as to require a denial of this relief on purely equitable grounds. It appears that 27 of the plaintiffs signed the petition which induced the location and construction of the drain. Five of them executed conveyances of the right of way for the drain, and were paid therefor. Two of them had a contract for constructing one-half mile of it. The drain is 10 miles in length, and its construction necessarily covered a considerable period of time, and, as we have seen, involved

the expenditure of large sums of money and the contracting of many obligations. The period of time covered and the character of the work being done makes it necessary to assume that the plaintiffs whose lands are adjacent to the ditch were fully cognizant of all these facts. No steps of any kind were taken by any of the plaintiffs to arrest the progress of the work, or to challenge its legality in court, by notice to the board or to contractors, or otherwise. This action was not instituted until the drain had been fully completed, and after all of the benefits accruing therefrom had been conferred. Under such circumstances a court of equity will not stop to inquire into questions of regularity or irregularity.''

In the case of *Motz et al. v. City of Detroit et al.*, 18 Mich. 495, and 528, in denying the injunctive relief sought, Chief Justice Cooley said: "Both the contractors and the petitioners—all of whom are residents of the city—knew that, by the city charter, the city was not and could not be made liable for the cost of the work, but that the contractors must rely upon the special assessment exclusively. There is no claim now on the part of these petitioners that the assessment of the expense of the improvement is made on any different basis from that contemplated by them when the petition was signed. Under these circumstances they must be taken to have been willing and actively consenting parties to all the proceedings which led to the assessment, and to have impliedly, at least, consented that such an assessment should be made. Whether, therefore, the assessment is legally valid or not, there is not the least ground on their part for claiming the interposition of a court of equity by its extraordinary process of injunction to stay the collection of the assessment.''

The principle contended for by respondents is supported by many additional authorities, among which are the following: *State v. Johnson*, 111 Minn. 255, 126 N. W. 1074, 1075; *Atwell v. Barnes*, 109 Mich. 10, 66 N. W. 583; *Fitzhugh v. City of Bay City*, 109 Mich. 581, 67 N. W. 904;

*Farr v. City of Detroit,* 136 Mich. 200, 99 N. W. 19; *Busenburk v. Clements,* 22 Ind. App. 557, 53 N. E. 665; *Brewer v. City of Elizabeth,* 66 N. J. L. 547, 49 Atl. 480; *Board of Commissioners v. Plotner,* 149 Ind. 116, 48 N. E. 635; *Pabst Brewing Co. v. City of Milwaukee,* 126 Wis. 110, 105 N. W. 563; *Wingate v. City of Astoria,* 39 Or. 603, 65 Pac. 982; *City of Ardmore v. Appollos,* 62 Okl. 232, 162 Pac. 211.

It is noteworthy that in this case appellant has not claimed that his lands are being unfairly assessed as compared with other lands of the district, nor that any fraud has been perpetrated by the commissioners in the handling of the funds of the district, nor that his lands have not received the benefit that respondents claim them to have received. His action is brought to escape the entire assessment because of certain irregularities of which, according to the findings of the trial court, he must have known before any considerable additional expense was incurred. He has obtained relief from the excessive amount of the assessments that the commissioners proposed to collect each year, which is all he is entitled to in this action.

The judgment of the district court is affirmed, with costs to respondents.

Rice, C. J., and McCarthy, J., concur.