STERLING BANK OF SLEEPER & CHAMBERLAIN *v.* SCOTT.

1. DRAINS—FRAUD—EVIDENCE—SUFFICIENCY.
    On a cross-bill attacking the validity of drain proceed-
    ings, claims that the contractor's bid was lower than the
    price fixed in the contract and that the yardage was not
    as large as he was paid for, *held*, not sustained on the
    record.[1]

2. EVIDENCE—DRAIN PROCEEDINGS—NOTICE—PRESUMPTIONS.
    Where, in a suit attacking the validity of drain proceed-
    ings, the record affirmatively shows publication and post-
    ing of the notice provided for in 1 Comp. Laws 1915, §
    4902, as amended, but is silent as to service on the in-
    terested parties, it must be assumed by the court that said
    service was made.[2]

3. DRAINS—ORDER NOT VOID BECAUSE PART OF CONSTRUCTION OF
    BRIDGE NOT LET IN SEPARATE CONTRACT.
    Where the construction of a bridge over a drain was made
    necessary by requirement of the State highway depart-
    ment, and flooring same was part of the construction, an
    order on the drain fund for said flooring was not invalid
    because the contract therefor was not let separately.[3]

4. SAME—ORDER SIGNED BY ONLY TWO COMMISSIONERS—TRANSFER
    OF ORDER TANTAMOUNT TO ASSIGNMENT OF CLAIM.
    That a drain order was signed by only two of the three
    commissioners, did not invalidate it, and its transfer to
    the bank was tantamount to an assignment of the con-
    tractor's claim for labor.[4]

5. SAME—DRAIN PROCEEDINGS MAY NOT BE ATTACKED FOR IRREGU-
    LARITY LONG AFTER WORK COMPLETED.
    That the survey and plans for bridges in constructing a
    drain were not made by a registered surveyor as re-
    quired by Act No. 334, Pub. Acts 1919, but were made by
    the contractor, who was a competent surveyor, was, at
    most, but an irregularity which may not be taken ad-
    vantage of in a court of equity by parties who stood by

[1]Drains, 19 C. J. § 169 (Anno). [2]Evidence, 22 C. J. § 70;
[3]Drains, 19 C. J. § 186 (Anno); [4]Id., 19 C. J. § 39 (Anno).

and saw the work done without protest and without seeking to review the proceedings by certiorari as provided by 1 Comp. Laws 1915, § 4908; no constitutional right of the parties being affected by said irregularity.[5]

6. SAME—SURVEYOR WHO MADE PLANS FOR BRIDGES MAY BID THEREON.

The surveyor who made the plans for bridges in constructing a drain, although not registered as a surveyor under Act No. 334, Pub. Acts 1919, was not precluded from bidding on the contract, nor the drain commissioners precluded from letting the contract to him if he was the lowest responsible bidder.[6]

Appeal from Ogemaw, Smith (Guy E.), J. Submitted April 21, 1925. (Docket No. 52.) Decided June 18, 1925.

Bill by the Sterling Bank of Sleeper and Chamberlain, a copartnership, against Elmer E. Scott, drain commissioner of Ogemaw county, and others for the payment of certain drain orders. The township of Clayton and others were permitted to intervene and file a cross-bill attacking the validity of the drain proceedings. From a decree for defendants, plaintiff appeals. Reversed, and decree entered for plaintiff.

*Campbell & Foster* (*G. W. Hand,* of counsel), for plaintiff.

*Evender M. Harris,* Prosecuting Attorney, for defendants.

*William T. Yeo,* for intervening defendants.

FELLOWS, J. Plaintiff owns four drain orders drawn on the fund of the Craner Creek drain, a three county drain, which were issued to one Lucas for bridge construction work done by him during the construction of the drain. The orders were presented for pay-

[6]Drains, 19 C. J. § 154 (Anno); [6]Id., 19 C. J. § 169 (Anno).

ment when there was enough money in the fund to pay them and payment was refused on the advice of the prosecuting attorney. Plaintiffs sought to compel payment by mandamus. A township and several interested parties were permitted to intervene, and upon their application and that of defendants the case was transferred to the chancery side of the court and the interveners filed a cross-bill seeking to set aside the drain proceedings and restrain payment of the orders. From a decree for interveners and defendants, plaintiff appeals.

No question is raised as to the propriety of the transfer of the case, and we shall dispose of it as it comes to us as an equity case. The final order of determination was made November 10, 1920, and the cross-bill attacking the validity of the proceedings was filed October 22, 1923, long after the drain and bridges were fully constructed. The cross-bill did not allege any fraud but upon the trial some claim was made that Mr. Lucas' bid was lower than the price fixed in the contract and that the yardage was not as large as he was paid for. We think neither claim is sustained on this record. It is here urged that the notice to interested parties provided for in section 4902, 1 Comp. Laws 1915, as amended (Comp. Laws Supp. 1922, § 4902), was not given. The record affirmatively shows publication and posting of the notice but is silent as to service on the interested parties. In the absence of any evidence we must assume that the officers did their duty. *Collins* v. *City of Detroit,* 195 Mich. 330. One of the orders was for flooring bridge on a trunk line highway (M-76) and it is urged that this work should have been separately let to the lowest bidder. But this was a part of the construction of this bridge and was made necessary by requirements of the State highway department. The payment was at the contract price

which was the lowest bid.    One of the orders was signed by only two of the commissioners, but its transfer to plaintiff was tantamount to an assignment of Mr. Lucas' claim for labor.    *Sandusky Grain Co.* v. *Condensed Milk Co.*, 214 Mich. 306, 328.    What we have said demonstrates that no constitutional rights of the complaining parties have been invaded.

The principal complaint against the regularity of the drain proceedings is that the survey and plans for the bridges were made by a surveyor who had not registered under the provisions of Act No. 334, Pub. Acts 1919, § 19 (Comp. Laws Supp. 1922, § 6897 [19]).    The survey was made by Mr. Lucas, a surveyor of 20 years' experience; the plans for the bridges were also made by him; the expenditure exceeded $2,000.    Some of the work in surveying and making the plans was done before and some after the act took effect.    The orders here involved are not for the service of Mr. Lucas in making the plans and doing surveying so that *In re Reidy's Estate*, 164 Mich. 167, and kindred cases do not apply.    The fact that Mr. Lucas made the plans did not preclude him from bidding on the contract, or preclude the drain commissioners from letting the contract to him if he was the lowest responsible bidder.    The orders here involved are orders issued to him as a contractor.    The contention is that section 19 of the act in question inhibits the use of plans and surveys made by unregistered surveyors and engineers and that, therefore, there has been no legal survey or plans made.    We shall not consider the constitutionality of the act; it is not raised.    Nor shall we consider its applicability to drain proceedings or its construction. The failure to observe it does not affect the constitutional rights of the complaining parties and is an irregularity at most.    The case should, we think, be disposed of under former decisions of this court and

upon broad equitable principles. This irregularity, if it is an irregularity, is one which can not be taken advantage of in a court of equity at this late day. There is nothing so far as this record discloses or so far as any claim is made by defendants even intimating that Mr. Lucas was not a competent engineer. He had had 20 years of experience, a large amount of it being in connection with drains. The record affirmatively shows that he fully performed his contract with the commissioners and that his work even up to the time of the hearing had stood the test. While all of this work was going on the now complaining parties stood by and saw it done without protest. None of them appealed from the assessment of benefits, none of them sought review of the proceedings by certiorari, a remedy provided for by section 4908, 1 Comp. Laws 1915. They now have and for some time have had the benefit and use of the drain and the bridges, and a court of equity will not now listen to their stale complaint.

The statute just cited provides for review of the proceedings by certiorari and says:

"If no certiorari be brought within the time herein prescribed, the drain shall be deemed to have been legally established, and its legality shall not thereafter be questioned in any suit at law or equity."

In *Township of Clarence* v. *Dickinson*, 151 Mich. 270, Mr. Justice CARPENTER, who wrote for the court, pointed out that while a court of equity would assume jurisdiction where constitutional rights had been invaded it would not do so but would leave the parties to their statutory remedy where only questions of irregularities which did not affect such rights were involved. Numerous other cases in this court have in effect announced the same rule; and it is particularly applicable where interested parties, as in the instant case, have stood by and seen the work progress,

and after the job was completed and they have secured the benefits, and the pay day has arrived, insist in an attempt to defeat payment that the statutory provisions have not all been strictly followed, and they should, therefore, be relieved of payment for the benefits secured.    Among such cases see *Township of Swan Creek* v. *Brown,* 130 Mich. 382; *Farr* v. *City of Detroit,* 136 Mich. 200; *Crandall* v. *McElheny,* 146 Mich. 191; *Auditor General* v. *Bolt,* 147 Mich. 283; *Jones* v. *Gable,* 150 Mich. 30; *Stellwagen* v. *Dingman,* 229 Mich. 159.

The decree will be reversed and one here entered granting plaintiff the appropriate relief.    Plaintiff will recover costs of both courts.

McDONALD, C. J., and CLARK, MOORE, STEERE, and WIEST, JJ., concurred.    BIRD and SHARPE, JJ., did not sit.