Coggeshall v. The City of Des Moines.

COGGESHALL *et al.* v. THE CITY OF DES MOINES *et al.*

1. **Cities: CONTRACTS FOR PAVING: NON-COMPLIANCE WITH STATUTE: ASSESSMENTS VOID.** The defendant city assuming to act under chapter 168, Laws of 1886, by notice invited bids for every form of pavement, regardless of the materials of which it might be composed,—the only limitation being that it be modern, and be now in use; and the question as to which kind should be adopted was left to be determined upon a comparison, not only of the prices bid, but of the merits of the different kinds of pavements upon which the bids should be made. *Held* that a contract for paving under such proceedings was void, and that assessments upon abutting property to pay for it could not be enforced, because the manifest object of the statute, which is mandatory in its provisions, is to secure definite bids for a particular kind of work, and that object can be accomplished only by determining in advance the character of the work, and the materials of which it shall be composed.

2. ———: ———: INVALIDITY: ESTOPPEL OF PROPERTY-OWNERS. The contract in such case being void for want of jurisdiction in the council to make it, the owners of abutting property which was assessed to pay for the paving were not estopped from denying

the right of the city to make the assessment, on the ground that they made no objection until after a portion of the work had been done and the expense incident thereto incurred. (See *Starr v. City of Burlington*, 45 Iowa, 87.)

3. ———: COST OF PAVING STREET INTERSECTIONS : BORROWING MONEY IN ANTICIPATION OF TAX. It is provided by section 4, chapter 38, Laws of 1882, that it shall be competent for any city authorized by that act to levy a tax to pay for the paving of street and alley intersections "to anticipate the collection thereof by borrowing money, and pledging such tax, whether levied or not, for the payment of the money so borrowed." *Held* that there was no limitation upon the city as to the amount of work of the kind contemplated it might do in a single year, except the limitation of the constitution as to the indebtedness it might contract, and that the section did not limit the city, in making the loan provided for, to the amount of tax which would accrue under a levy for a single year, but that it was empowered to pledge the tax to any extent necessary to enable it to meet such indebtedness as it might lawfully incur in a single year, and to levy a tax for successive years for that purpose.

*Appeal from Polk District Court.*—HON. JOSIAH GIVEN, Judge.

FILED, FEBRUARY 8, 1889.

THIS is an action to restrain the enforcement of certain special assessments, made by the city of Des Moines against the real estate of plaintiffs, to pay the cost of paving the streets upon which the property abuts; also, to restrain the collection of a two-mill tax levied to pay certain "intersection bonds" issued by the city; and for general equitable relief. The district court on the final hearing dismissed the petition, and plaintiffs appeal.

*Kauffman & Guernsey*, for appellants.

*Gatch, Connor & Weaver, Cummins & Wright* and *James H. Detrick*, for appellees.

REED, C. J.—I. In May and June, 1886, the city council adopted resolutions ordering that certain streets

Coggeshall v. The City of Des Moines.

**1. CITIES: contracts for paving: non-compliance with statute: assessments void.** in the city be paved, and directing the city clerk to advertise for bids for doing the work. On the twenty-first of June they adopted certain plans and specifications for different kinds of pavements. These specifications covered pavements of cedar blocks on plank and concrete floors, macadam, with cement gutters and cross-walks, and the same material on Tilford foundation and brick. They provided that the contract price per square yard for the work should embrace everything requisite to be done for the completed pavements, and that the contractors should do all filling and grading necessary to bring the streets to the proper grade for receiving the payment, and remove and dispose of all surplus earth. They also provided the manner in which the different kinds of paving therein referred to should be done, but did not designate the kind of pavement which should be laid upon the different streets; nor did the council at any time before the bids were received determine the material which should be used upon any street. The published notice invited bids for "all the various kinds of modern pavements," but provided that the bids should be on the basis of the plans and specifications adopted by the council. The defendants Ragan Bros. and J. B. Smith & Co. each filed bids for the work. Ragan Bros., by their bids, offered to lay down either cedar blocks or macadam and granite, and designated the prices at which they were willing to do the work. Smith & Co. bid only for cedar blocks, and the prices at which they offered to do the work were different in different localities. The council accepted the bid of each for a cedar block pavement, with plank foundation, on certain designated streets, and contracted with each of the firms for the portion of the work awarded to them, at a specified price per square yard; the contracts each providing that the contractors should do the excavating and filling necessary to bring the streets to the proper grade, but should receive no further consideration therefor. They also provided that the cost of the work should be assessed against the abutting

property, and that certificates for the amount due from each property-owner, which would be a lien on the property, and enforceable against the owners, should be issued to the contractors, and that the city should in no event be responsible or liable therefor. While the work was in progress plaintiffs gave notice to the contractors and the officers of the city that they would contest the right of the city to assess any portion of the cost of the work against their property. The contractors, however, went on with the work, and when it was completed the council proceeded to assess the cost against the property abutting on the streets, and issued to the contractors the certificates provided for in the contracts; and one object of this suit is to restrain the enforcement of such of them as purport to affect plaintiffs and their property. The grounds upon which plaintiffs demand relief are, (1) that the council were by the statute required to determine in advance the kind and quantity of material to be used in doing the proposed work, and that having failed to do that before advertising for and receiving the bids the contract is void; (2) that the council had no power or authority to tax against the abutting property the cost of paving the street and alley intersections; and (3) that the property was not chargeable with the cost of the grading necessary to be done in preparing the streets for the paving.

The council assumed to act in the transaction under the powers conferred upon the city by chapter 168, Laws Twenty-first General Assembly. The second and third sections of the act are as follows: "Sec. 2. When the council of any such city shall direct the paving and curbing or sewering of any street or streets, they shall make and enter into contracts for furnishing materials, and for the curbing and paving or sewering, as the case may be, of such street or streets, either for the entire work in one contract, or parts thereof in separate and specified sections, as to them may seem best: provided, that no work shall be done under any such contract until a certified copy shall have been filed in the office of the city clerk. Sec. 3. All such contracts shall be

made by the council in the name of the city, upon such terms of payment as shall be fixed by the council, and shall be made with the lowest bidder or bidders, upon sealed proposals, after public notice for not less than three weeks in at least two newspapers of said city, which notice shall contain a description of the kind and amount of work to be done, and materials to be furnished, as nearly accurate as practicable."

It appears to us that there is no ground for controversy as to the effect of these provisions. They relate to the powers of the cities affected by the act. The first section, by its terms, provides that the cities included in its provisions "shall have the powers and be subject to all the provisions of this act." The provisions of the sections quoted are clearly mandatory. They provide that the contract shall be entered into with the lowest bidder; that the bids shall be sealed, and shall follow the published notice; and that the notice "shall contain a description of the kind and amount of work to be done, and material to be furnished, as near as practicable." This latter provision necessarily implies a determination by the council, in advance of the publication of the notice, of the kind of material to be used in the proposed work; for without such determination it would be impossible to comply with the requirement as to the contents of the notice. The manifest object of the provision is to secure definite bids for a particular kind of work, and that object can be accomplished only by determining in advance the character of the work, and material of which it shall be composed; and the power of the council to contract for the work is dependent on whether they have procured bids for doing it of the character and in the manner required by the statute.

It is apparent from the foregoing statement of the facts of the case that there was a substantial departure in the present instance from the requirements of the statute. The council did not determine in advance the character of the work, or the material of which it should be composed, but advertised for bids "for all

the different kinds of modern pavements now in use."
By the notice, bids were invited for every form of pave-
ment, regardless of the material of which it might be
composed,—the only limitations being that it be
modern, and be now in use; and the question as to
which kind should be adopted was left to be determined
upon a comparison, not only of the prices bid, but of
the merits of the different kinds of pavements upon
which bids should be made. It may be that combina-
tions among bidders, or collusions between them and
the council, would be as effectually prevented, and fair
competition secured, by that as by any other plan that
could be adopted. But it is a sufficient answer to all
that was said in argument by counsel on that question
to say that the statute leaves to the council no discretion
as to the course which shall be pursued; and it needs
neither argument nor the citation of authorities to prove
that when the citizen is sought to be charged with the
cost of works of public improvement from which he
derives but little benefit or advantage, except such as
are shared by the members of the public generally, the
power must be exercised strictly in the manner
prescribed by law. As the question we have considered
relates to the powers conferred upon the city by a
particular statute, but little aid in determining it is to
be derived from adjudicated cases. Our conclusion is,
however, sustained to some extent by *Brady v. Mayor*,
20 N. Y. 312; *People v. Board*, 43 N. Y. 227; *Kneeland
v. Milwaukee*, 18 Wis. 411; *Wells v. Burnham*, 20 Wis.
115. Appellees cited and relied on *Attorney General v.
Detroit*, 26 Mich. 263. In that case the city received
two bids for a pavement which was protected by a
patent. One of the bids was by the patentee. The
other was by a person having no right under the patent.
The city council rejected the bid of the latter, although
it was the lower, and contracted with the patentee.
Their action in that respect was sustained on the ground
that, as the lowest bidder might be enjoined from doing
the work, he could not be regarded as a responsible
bidder. The charter of the city provided that all

contracts for public work should be let to the lowest responsible bidder, and it was contended that, as a patented pavement could be constructed only by the owner of the patent, there could be no competition as to that particular pavement, and as a consequence the council could not in any case contract for it. But the court held that there was nothing in the charter which required the council to determine in advance the kind of pavement it would construct, but that it might determine that question after the bids were received, and hence the action of the council in accepting the bids for the patented article in competition with others not so protected was not in violation of its provisions. But the case does not determine the question here involved, for, as we have seen, by its terms the statute does require the determination of the question in advance.

It is insisted, however, that as plaintiffs made no objection until after a portion of the work had been done, and the expense incident thereto incurred, they are now estopped from denying the right of the city to assess their proper proportion thereof against their property. This position is disposed of by the holding of this court in *Starr v. Burlington*, 45 Iowa, 87. The defect of the proceedings was not a mere irregularity, as in *Patterson v. Baumer*, 43 Iowa, 477, but was jurisdictional. The council omitted to do the acts which, under the statute, are essential to their power to enter into any contract for the paving of the streets. The power to contract for the improvements must of necessity be acquired before any tax can be levied to pay the expense incurred in making them. Having reached the conclusion that the assessment is invalid for want of power in the council to make it, it becomes unnecessary to consider those objections which go to but a portion of it.

2. invalidity: estoppel of property-owners.

II. In 1882 the city caused a large amount of paving to be done, the cost of which, except the

**3. ——: cost of paving street intersections: borrowing money in anticipation of tax.** intersections of streets and alleys, was taxed to the abutting property. The cost of paving the intersections largely exceeded the revenue which it would derive from the two-mill levy, which it was empowered to make for that purpose, and which it had made for that year. It accordingly borrowed large sums of money for the purpose of meeting the deficiency, and issued its bonds therefor, and for each of the succeeding years it has levied a two-mill tax to pay the interest and principal thereof. One of the objects of this suit is to restrain the collection of that levy for the year 1886. It is provided by the fourth section of the act under which the city assumed to make the levy (chapter 38, Laws 19th Gen. Assem.) that "it shall be competent for any city, authorized by this act to levy such tax, to anticipate the collection thereof by borrowing money, and pledging such tax, whether levied or not, for the payment of the money so borrowed, but such money shall be used or appropriated to no other purpose." Other sections of the act provide that the cost of paving intersections, when the cost of other portions of the work is taxed to abutting property, shall be paid out of a general paving fund, which is to be raised by a two-mill tax upon the taxable property within the city. It was contended that the provision quoted above empowers the city only to pledge the money which will be derived from the levy for the year during which the pledge is made, and that the city had no authority to borrow in excess of that, and hence the levy for the purpose of paying the remaining portion of the loan is void. We are of the opinion that this position cannot be sustained. There was no limitation upon the city as to the amount of work it might do in a single year, except such as might arise out of the constitutional limitation upon its power to contract indebtedness, and it was evidently not the intention of the general assembly to create any such limitation by the act in question. If was within its power, then, during any one year, to make improvements to any extent it chose, within the limitation of

Coggeshall v. The City of Des Moines.

the constitution as to the indebtedness it might contract, and the purpose of the act was to provide a means for raising the money to pay that portion of the cost which under existing laws could not be assessed against the abutting property. By its provision the city was allowed to anticipate the revenue to be derived from that source, by borrowing the amount necessary to meet the expenditure, and pledging the tax for the payment of the loan. The language of the section does not limit it in making such loan to the amount which would accrue under the levy for a single year, but it is empowered to anticipate the tax before any levy thereof is made. The effect of this provision clearly is to empower the city to pledge the tax to any extent necessary to enable it to meet such indebtedness as it might lawfully incur in a single year. As to that tax, then, the judgment of the district court will be affirmed; as to the special assessment, it will be

REVERSED.

ON REHEARING.

[FILED, JUNE 8, 1889.]

PER CURIAM.—The petition for a rehearing of the above cause having been submitted to this court, after duly considering the same, we see no good reason for modifying the opinion already filed. The petition for a rehearing is for the most part based upon considerations not presented upon the original submission. It is proper, however, to say that the decree in this case should limit the operation of the injunction to the assessment and levy, which are held to be void in the foregoing opinion, and to them only. It is not intended by the opinion to affect any other rights which the contractor or the city may have to enforce payment for the paving, if they have any such rights, a question which we do not now determine.