EMMA M. LEE et al., Appellants, v. CITY OF AMES, Appellee.

IN RE APPEAL OF EMMA M. LEE (and three other cases).

**MUNICIPAL CORPORATIONS: Street Improvements—Awarding Contract—Noninvalidating Procedure.** A paving contract let on competitive bidding to the lowest bidder is not rendered illegal (1) because the specifications and published notice (which required the contractor to obtain the contract for "extra excavation"), in addition to calling for bids for paving, unnecessarily called for bids on "extra excavation;" and (2) because, in awarding the con-

tract, the council, without making any record thereof, allowed the successful bidder on paving to reduce his bid on "extra excavation," in order to meet the low bid of another bidder who bid on "extra excavation" only.

MUNICIPAL CORPORATIONS:    Street Improvements—Grading—Re-
2   jecting Low Bid.   Contracts for *grading* a street need not be let to the lowest bidder, even though the council advertises for such bids.

MUNICIPAL CORPORATIONS:    Street Improvements—Letting Con-
3   tract—Bribe.   The statement of a contractor (who was the lowest bidder on a contract for paving) to a city council to the effect that, if the paving contract was awarded to him, he would meet the low bid of another bidder on "extra excavation" only, does not constitute the offering of a bribe.

Headnote 1:   28 Cyc. pp. 1028, 1029.   Headnote 2:   28 Cyc. p. 1031.
Headnote 3:   28 Cyc. p. 1031.

*Appeal from Story District Court.*—E. M. McCALL, Judge.

MAY 12, 1925.

IDENTICAL objections made by four different property owners to certain paving assessments were overruled by the city council of Ames. Upon appeal to the district court, the assessments were affirmed. This appeal is from the decree of the district court. The cases were consolidated for the purpose of trial in the district court, and are presented in like manner on this appeal.—*Affirmed.*

*Lee & Garfield* and *R. L. Bryant,* for appellants.

*J. Y. Luke,* for appellee.

ARTHUR, J.—The paving project involved started in the fall of 1915, when a resolution of necessity for paving some principal streets of the city of Ames was adopted by the city council. On September 20, 1915, construction was ordered. In December, plans and specifications were approved. Clauses of the specifications having some bearing on matters in controversy are:

1. MUNICIPAL CORPORATIONS: street improvements: awarding contract: noninvalidating procedure.

"(1) * * * and no bidder will be awarded the contract for extra excavation unless he receives the award for the corresponding paving. Any bidder submitting prices on any one of the different types of paving must also submit prices on curb and gutter and extra excavation.

"(2)  The price per square yard for paving includes the furnishing of all materials and labor, doing the excavation for a depth equal to the thickness of the pavement, preparing the subgrade, constructing concrete base, constructing the pavement surface, adjusting all manholes, lamp holes, valve and curb boxes, and catch basin covers within the lines of the pavement, so as to fit the new grade, and doing all other work incident to the construction and completion of the pavement.

"(3)  The price per cubic yard for extra excavation shall include the excavation, loading, hauling (not to exceed 2,000 feet), and disposition of the material in accordance with Section 5, Paragraph 1, and all other work incident to the doing of the extra excavation required. If the length of haul is over 2,000 feet, overhaul will be allowed as specified.

"(4)  The price bid per square yard for pavement shall include the excavation of the material for a depth equal to the thickness of the pavement, materials that must be removed in excess of this amount will be paid for at the price bid for extra excavation."

The advertisement for bids, published early in January, 1916, contained the following clauses:

"Sealed bids will be received until 6 o'clock P. M., January 17, 1916, at the office of A. B. Maxwell, city clerk of Ames, Iowa, for curbing, paving and doing the necessary grading and incidental work on the following named streets. * * * All bids received by the city clerk will be publicly opened at 8 o'clock P. M., read and a record made of same. No permission will be given to withdraw or modify any proposal after the clerk has announced time for filing bids is closed. The council reserves the right to reject any and all bids or to let separate contracts on one or more of the different types of pavement, for which bids are received, or to award the contract for the curb and gutter work separately from the paving contract. * * * and no bidder will be awarded the contract for extra excavation unless he

receives the award for the corresponding paving.  Any bidder submitting prices on any one of the different types of paving must also submit prices on curb and gutter and *extra excavation.*"

On January 16, 1916, at a meeting of the council, the bids were opened and read.  The bids contained proposals on three separate items: namely, for paving, curbing and guttering, and "extra excavation."  The advertisement called for bids upon nine different types of paving: namely, vitrified brick, creosoted wood block, six different kinds of asphalt, and bitulithic pavement.  There were nine different bidders upon the paving, two upon curb and gutter alone, and eleven bids on extra excavation.  All of the pavement bids, except one, contained proposals for brick paving.  Most of them also contained proposals for wood block and asphalt paving.  There were two bids on bitulithic pavement: one by the Des Moines Asphalt Paving Company, at $1.89½ per square yard, and the other by James Horrabin & Company, at $1.92½ per square yard.  Eleven of the twelve bidders submitted bids on extra excavation, ranging from 34 cents to 50 cents per cubic yard.  The bid of the Des Moines Asphalt Paving Company was 50 cents per cubic yard, or a total of $6,544.  The Des Moines Asphalt Paving Company was the low bidder on bitulithic paving, with a price of $1.89½ per square yard.  Sam Bowers, who made no bid on the paving or curb and gutter, was the low bidder on the extra excavation, at a price of 34 cents per cubic yard.  The council made no decision at this session, and adjourned to meet three days later.

At the meeting of the council on January 19, 1916, at which there were present the mayor, Parley Sheldon, and councilmen Stultz, Rice, Gilchrist, Murray, Corlett, and Spinney, it was moved by Corlett "that the contract be awarded to the Des Moines Asphalt Paving Company for paving with bitulithic pavement."  The motion was carried, by unanimous vote of the council.  At this meeting of the council, a formal resolution was adopted, by unanimous vote of the council, accepting the bid of the Des Moines Asphalt Paving Company for the improvement of certain streets and avenues by paving with bitulithic pavement, and instructing the mayor to enter into

contract, on behalf of the city, with said company for the construction of said improvement.

On January 31, 1916, at a meeting of the council, Mayor Parley Sheldon, in a written communication, returned the resolution awarding the contract for paving to the Des Moines Asphalt Paving Company, without approval, and stated as his reasons therefor, in substance, that the bid accepted was 6½ cents higher per square yard than the bid of the same company for asphaltic paving, and stated that:

"I object to and withhold my assent from the same because I regard the expenditure of the public and private funds largely in excess of the bid of same firm for a pavement more durable and less expensive in maintenance during its economical life."

At a meeting of the council on February 7, 1916, the resolution awarding the contract for paving to the Des Moines Asphalt Paving Company, passed on January 19, 1916, and vetoed by the mayor, was adopted and passed, over the objections of the mayor, by unanimous vote of the council; and the contract was signed by the mayor, on behalf of the city, and by the Des Moines Asphalt Paving Company, and by a formal resolution approved by unanimous vote of the council.

The records of the council do not disclose any proceedings in reference to the contract for the extra excavation; but the contract itself shows that the contract for extra excavation was made with the same company, at the price of 34 cents per cubic yard. This was not in a separate contract, but was included in the contract for the paving improvement.

On the trial, appellants produced as witnesses the city clerk, A. B. Maxwell, and Parley Sheldon. Maxwell produced and identified copies of the various bids, and testified that the bid of the Des Moines Asphalt Paving Company for extra excavation was 50 cents per cubic yard, and amounted, on the estimate furnished, to $6,544; that the bid of Sam Bowers for extra excavation was 34 cents per cubic yard, totaling $4,449.92; that the contract for paving entered into with the Des Moines Asphalt Paving Company contained also a contract for extra excavation at 34 cents per cubic yard. The witness also testified that his record contained nothing about negotiations with refer-

ence to the extra excavation contract, outside of the contract itself.

Parley Sheldon testified that John MacVicar was before the council, representing the Des Moines Asphalt Paving Company, and that:

"When the matter was up for final consideration before the council, it developed that there was a difference in the bids for the excavating, between the bid of the Des Moines Asphalt Paving Company, and Sam Bowers'. The Bowers bid was considerably lower than the Des Moines Asphalt Paving Company for that part of the contract, and Mr. MacVicar made the proposition that, *if he were awarded the contract, he would meet the bid of Mr. Bowers.*"

Witness testified that the council accepted the proposition made by MacVicar. Witness also testified that he was not in favor of bitulithic paving; that he did not veto the resolution simply because the Des Moines Asphalt Paving Company was given the contract for extra grading at the same price as the bid of Mr. Bowers; but that he considered the bid of the same company for asphalt paving better. Witness further testified that there was considerable feeling aroused as to what paving should be used.

The complete objections before the city council consisted of eighteen separate objections. On the trial in the district court, only two objections were pressed,—the third and fourth; and these are the only ones presented on this appeal. Said objections are:

"Third. Because no valid contract was ever entered into between the city and any alleged contractor for the construction of said improvement. Fourth. Because the alleged contract under which the alleged contractor pretended to construct the improvement for which it is sought to levy a special assessment against this objector's premises was null and void, because said contract was not let by sealed proposal, as required by statute, but the same was let in defiance of the statute, as the result of private negotiations between the city council and the alleged contractor, and under a modification of the sealed proposal as an inducement to said contract."

It appears in the record, and is, of course, conceded in

argument, that the cost of the paving was to be and was assessed against abutting property, as provided in Chapter 7, Title V, Code of 1897. It is also agreed that the cost of extra excavating and grading to bring the streets to the established grade for the purpose of laying the pavement was not to be borne by abutting property, but was to be paid, and was paid, by the city from its grading or general funds.

There is no disagreement between counsel, and there could not be, that the contracts for construction of the pavement and curb and gutter must be let to the lowest bidder, upon sealed proposals, as provided by Section 813, Code of 1897. The contract for curb and gutter was awarded to the firm of Aiken & Flutter, who were the lowest bidders on that work. Said contract is not in controversy in this case.

It is the position of appellants, stated in their grounds for reversal, that the decrees of the trial court are wrong, (1) because the law required the city to let the contract, if at all, to the lowest bidder, upon a sealed proposal, invited by the published notice, and the council in fact rejected all sealed proposals, and let the contract by private negotiation; (2) because the contract entered into with the Des Moines Asphalt Paving Company was not a contract entered into by virtue of a sealed proposal, submitted by competitive bidding, but was a contract made between the city and the company whereby the company agreed to reduce its bid to the extent of 16 cents per cubic yard for grading, in order to secure the contract for paving; (3) because the city, having specified that the contract for paving and the contract for excavating must be let to the same person, could not, if it desired to use bitulithic pavement and desired to avoid readvertising, accept the proposal of the Des Moines Asphalt Paving Company to do the grading at 34 cents per cubic yard, instead of at its bid of 50 cents, as an inducement for letting the contract to said company; (4) because the effect of the transaction was to reject all bids and let the contract upon a private offer; (5) because it was not competent for the Des Moines Asphalt Paving Company to be permitted to modify its bid, without giving all bidders the same opportunity, by readvertising; (6) because, when the company offered to reduce its bid for grading, the council was charged with notice that

all bids for bitulithic pavement and extra excavation were too high, and, being charged with such knowledge, the council had no authority, in law, to enter into a contract, either upon any of the bids or by virtue of private negotiations.

Briefly stated, it is the position of appellants that the contract entered into between the city and the Des Moines Asphalt Paving Company was not let on sealed proposal, as provided by statute.

It is the position and defense of appellee that the contract for bitulithic paving was, in pursuance of valid proceedings, awarded to the lowest bidder on that type of pavement, upon sealed proposals, thereby strictly complying with the provisions of Section 813, Code of 1897; that the original bid in the sealed proposal was for $1.89½ per square yard; and that the contract was let at exactly that price.

We think appellants'. position not tenable. The bids for the paving and extra excavation were made in accordance with the notice and specifications, and were entirely separate and distinct proposals. The council could, in the exercise of its judgment, select the bitulithic paving. It did accept the lowest bid for that kind of pavement, and entered into a contract therefor in accordance with the sealed proposal.

Now as to the portion of the contract entered into respecting extra excavation: It is conceded that the cost of grading the streets preparatory to paving could not be assessed against abutting property. This cost must be borne by the city. Unquestionably, the city had the power to raise the funds by taxation, and pay for the same from said funds. Code of 1897, Section 782 (Code of 1924, Section 5951); Section 894, Paragraph 1, Code of 1897 (Section 6211, Paragraph 1, Code of 1924). In *Humboldt County v. Incorporated Town of Dakota City*, 197 Iowa 457, we said:

"A city or town has the right to improve its streets and pay therefor from the general fund, or from the highway or poll taxes, or partly from each of said funds. Section 751, Code Supplement, 1913. It is not necessary that it proceed under Title V, Chapter 7, of the Code. It might do so if it saw fit."

We have no statute in this state requiring contracts for excavation and grading of streets preparatory to paving to be

let under competitive bidding. In the absence of statutory requirement, the city was not required to let the contract for "extra excavation" under competitive bidding, as is required in paving. 3 McQuillin on Municipal Corporations, Section 1186; *Price v. City of Fargo,* 24 N. D. 440; *Elliott v. Minneapolis,* 59 Minn. 111; *Middle Valley Trap Rock & Mining Co. v. Board of Freeholders,* 70 N. J. Law 625. It is well settled that a municipal corporation need not, in making its contract, advertise for bids and let to the lowest bidder, in the absence of an express statutory requirement; and where a city is not required to advertise for bids, neither is it required to let to the lowest bidder, in case it does adopt such course. 20 Encyc. of Law (2d Ed.) 1165, and cases cited. The council was not required to call for bids for the extra excavation. It was not obliged to let said work to the low bidder on sealed proposal. There being no statute requiring contract for grading to be let in pursuance of competitive bidding, the council could handle that matter as it saw fit, if it acted in good faith and without fraud. The city could do the grading itself, by hiring men to do the work.

*2. MUNICIPAL CORPORATIONS: street improvements: grading: rejecting low bid.*

In the case before us, the bids for grading were not a part of and included in the bids for paving. The bids for paving and grading were entirely separate bids. In *Dubbert v. City of Cedar Falls,* 149 Iowa 489, we said:

"As to the inclusion in the contract of compensation for extra grading, it is sufficient to say that the bid for asphalt paving did not include the grading, but the proposition with respect thereto was distinct; and, as this grading was to be paid for and was finally paid for out of the grading fund, the plaintiffs as taxpayers have no ground for complaint."

Bowers was the low bidder on extra excavation, but the council was not bound to award him the contract. The city, notwithstanding the clause in the specifications that "no bidder will be awarded a contract for extra excavation unless he receives the award for the corresponding paving," could lawfully have let the grading to Bowers, the low bidder. The only effect of the clause in the specifications, as we see it, is that the council was not bound to award the contract for grading to the low

bidder, when the contract for paving was not awarded to him, for the reason that the grading proposition is not governed by the special assessment statutes or regulated by any statute. Obviously, this clause was put in the specifications for the benefit of the city. By inviting bids for grading, although not required to do so, it would be furnished with valuable information as to what that work should cost. It will be observed that the specifications *did not* require the low bidder on the pavement selected to be also the low bidder on the "extra excavation." The council would have acted within its power if it had let the contract for grading to the Des Moines Asphalt Paving Company at its bid price of 50 cents per square yard.

Appellants' contention that the contract was the result of private negotiations is not borne out by the record, except in the sense that the portion of the contract relating to extra excavation was not awarded by competitive bidding. The conversation engaged in by MacVicar, the representative of the company, and the council, concerning the grading, was at a regular session of the council, where the mayor and all of the councilmen were present. We think the offer of MacVicar to meet the low bid on extra excavation was not, under the circumstances, in the nature of a bribe or material inducement. MacVicar's statement to the council was that, if he was awarded the contract, he would meet the bid of Bowers. MacVicar did not say to the council, "If you will select bitulithic pavement and award me the contract therefor, I will agree to meet the bid of Bowers." We think a fair interpretation of the statement made by MacVicar would be: "If I am awarded the paving contract, I would prefer to have the contract for the extra excavation also, and that I may have it, I will meet the bid of Mr. Bowers." We think any inference unreasonable and not warranted, that the offer as to the grading had influence on the selection of bitulithic paving or awarding the contract to the Des Moines Asphalt Paving Company therefor. The council secured the kind of paving it wanted, at the lowest price bid therefor, and contracted for the extra excavation to be done at the lowest price proposed. There is no showing in the record that appellants were injured or prejudiced in any way on account of the

3. MUNICIPAL
   CORPORATIONS:
   street improve-
   ments: letting
   contract: bribe.

fact that the contract for extra excavation was let to the firm which obtained the contract for paving.

We find no reason in law or equity for disturbing the assessments complained of. The decrees of the court below are affirmed.—*Affirmed.*

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.