HORRABIN PAVING COMPANY, Appellant, v. CITY OF CRESTON, Appellee.

No. 42847.

SEPTEMBER 24, 1935.

REHEARING DENIED OCTOBER 29, 1936.

Kelly, Shuttleworth & McManus, and R. Brown, for appellant.

J. D. Reynolds and K. H. Davenport, for appellee.

DONEGAN, J.—On July 27, 1925, the Horrabin Paving Company submitted to the city of Creston, Iowa, its proposal to do certain work upon four certain streets of said city upon which the pavement had become somewhat worn and out of repair,

and, on the same day, the city of Creston, by resolution of its city council, accepted this proposition. On the following day, July 28, 1925, the paving company and the city entered into four separate contracts, one for each of said streets, covering the proposed work and material to be furnished by the paving company. The four contracts were identical in form and substance, except that they referred to different streets. Under the terms of these contracts the paving company was to do the work and furnish the material for what is designated in the contracts as reflush coating the surface of the streets in question. This work consisted substantially in first giving the surface of the streets a thorough cleaning, and then applying a coat of thin soluble highly viscous oil. This was followed by a second coat of liquid asphalt, which, in turn, was followed by a thin coat of warm sand; all to be done pursuant to specifications which were made a part of the contracts. The paving company entered upon the performance of the contracts, and on October 19, 1925, the work was accepted as completed by resolution of the city council.

Thereafter, the city council adopted a resolution levying special assessments against the private property which it declared had been benefited and authorized the issuance of bonds in anticipation of the collection of such special assessments. One Jackson and certain other property owners appealed from the levy made by the city council, and one Mitchell and others instituted an injunction proceeding to restrain the city from issuing the bonds. Upon a trial of these actions in the district court the special assessments were canceled and an injunction issued as prayed. From the decrees thus entered appeal was taken to this court by Horrabin Paving Company and by Johnson County Savings Bank, to which the paving company had assigned its right to the proceeds of the contracts as security for a loan. So far as we can find from the record, neither the paving company nor the bank was a party to the action in the district court, but, after requesting the city to appeal from the decree in question, which it failed to do, they served notice of appeal as parties interested in the outcome of the action, such notice of appeal being served on the defendant city as well as on all other parties. Upon appeal to this court the two actions were consolidated. The opinion in that case, Jackson v. City of Creston, 206 Iowa 244, 220 N. W. 92, affirmed the decrees of the trial court, held that the work done under the contracts in question was not oil-

ing, that the failure to submit the contracts for the work done to competitive bidding rendered the contracts invalid, and that special assessments for the improvement could not be levied against the abutting property.

Following the decision of this court in Jackson v. City of Creston, supra, Johnson County Savings Bank and Horrabin Paving Company, as plaintiffs, instituted an action against the city of Creston, its officials, and the owners of the abutting and adjacent property, to recover the contract price for repairing the pavement under the four contracts in question, and alternatively for a peremptory writ of mandamus to compel the defendants to take the necessary proceeding for the issuance of proper obligations representing the amount due plaintiffs under the contracts and for obtaining liens upon abutting and adjacent property. By an amendment to their petition plaintiffs added a separate count in which they sought to recover the equivalent of the contract price as the reasonable and fair value of the material and labor furnished. Upon motion this amendment was stricken. Upon the trial of this case the district court entered a decree in favor of the defendants, and plaintiffs appealed. The opinion of this court in Johnson County Savings Bank et al. v. City of Creston et al., 212 Iowa 929, 231 N. W. 705, 237 N. W. 507, 84 A. L. R. 926, affirmed the decree of the trial court, held that the contracts were void because entered into in disregard of the statute requiring competitive bidding, and that, under the decree in Jackson v. Creston, which had been affirmed on appeal, the contractor and his assignee could not, on the theory of an implied contract, recover against the city either at law or in equity for the contract price or on a *quantum meruit*.

Following the decision of this court in Johnson County Savings Bank v. City of Creston, supra, plaintiff instituted the instant action in which a recovery is asked on the theory of unjust enrichment or quasi contract. Plaintiff claims that work and material were received and are retained by said city, and that, under the doctrine of what is known as quasi contracts, or contracts implied in law, the city should not be permitted to retain the benefits derived from plaintiff's work and labor and thus unduly enrich itself without paying therefor. For defense the defendant city denied generally all allegations of the petition; alleged that plaintiff's cause of action did not accrue within five years next preceding the commencement of the ac-

tion; that the said alleged contracts were a fraudulent attempt to evade the statutes providing for the resurfacing or reconstruction of pavements; that the price proposed to be paid under said contracts was exorbitant, unreasonable, and extortionate, and that the material was defective and the labor defectively performed in applying said material; that all rights and obligations between the parties were adjudicated in the prior actions; and that the plaintiff is barred and estopped from prosecuting this action because of its election to prosecute the prior actions upon the contracts. Upon the trial of the case the district court sustained the defense based on the statute of limitations and also held that the plaintiff was barred from prosecuting this action by its election to stand upon the contracts in the prior actions, and a decree was entered dismissing the petition at plaintiff's costs. From such decree, the plaintiff appeals.

Although based on equitable principles, the doctrine of quasi contracts is enforced in actions at law. In the instant case, however, plaintiff also alleged that defendant had collected and retained money for the work done by plaintiff and asked for an accounting. The case was brought and tried in equity by the trial court, and has been tried de novo on appeal. Several propositions are set forth and argued by the appellant as grounds for reversal. In our opinion, however, it is unnecessary to consider any questions other than those which involve the merits of the case. For convenience, and to avoid confusion, we deem it advisable to state at the outset that we shall hereafter refer to the name of the plaintiff as if it were a legal entity, although it is in fact only a trade-name under which an individual, W. A. Horrabin, conducted a general contracting business.

It is claimed by appellant that it should be allowed to recover in this action, because it furnished materials and labor from which appellee has derived benefits, that the appellee has been unjustly enriched to the extent of such benefits, and that the appellee is under a legal duty to recompense the appellant to the extent of such unjust enrichment. Appellee contends that, under the decisions of this court, the appellant cannot recover in this action. Much of appellee's argument and many of the cases cited by it are applicable to the question of the right to recover under a contract implied in fact, but are not decisive of the question as to whether one who cannot recover under an implied

contract in fact may nevertheless recover under the doctrine of quasi contract, or as it is sometimes called—contract implied in law, on the ground of unjust enrichment. It is true, as contended by appellee, that in many cases recovery has been denied against municipal corporations on the ground of unjust enrichment or quasi contract, where the money or property or services by which it was claimed the municipal corporation was enriched were furnished under an express contract which was invalid because *ultra vires*. It is not true, however, that, where a benefit has been received by a municipal corporation under an express but *ultra vires* contract, there can be no recovery against the municipal corporation, under any circumstances, on the ground of quasi contract or unjust enrichment.

Municipal corporations are creatures of the Legislature and possess only such powers as the Legislature has expressly granted to them, or such powers as are incidental to their existence, or such powers as may be implied from other powers granted. 44 C. J. 66; Johnson County Savings Bank v. City of Creston, 212 Iowa 929, loc. cit. 933, 231 N. W. 705, 237 N. W. 507, 84 A. L. R. 926. Quite frequently the powers possessed by a municipal corporation are restricted as to their exercise by either constitutional or statutory provisions. The term *ultra vires* has been commonly applied to such contracts of municipal corporations as are beyond the powers possessed by them, as well as to contracts which, although within the general scope of powers possessed, are in violation of specific constitutional or legislative restrictions. The plaintiff's cause of action in this case grows out of the benefits which it claims the city derived under a contract which belonged to the second class of *ultra vires* contracts above referred to. That is, in this case, the power was expressly granted to the city to make a contract either for the oiling of its streets or for the construction or repair of pavement thereon, but the power to enter into such contracts was restricted by statutory provisions.

Even though a municipal corporation may have derived a distinct benefit under an invalid contract, the party by whom such benefit was conferred has not always been allowed to recover on account thereof. Usually the ground for such refusal given by the courts has been that to allow a recovery under the facts of the case presented would be against public policy. Appellant contends that the refusal to allow recovery in such cases

on the ground of public policy must be confined to cases where practically the full amount involved in an invalid contract is sought under *quantum meruit*; that the only reason for so holding in such cases is that, if a contractor be allowed to recover in *quantum meruit* the full amount involved in an invalid express contract, this would place the temptation before contractors to try to induce municipalities to enter into *ultra vires* contracts, on the theory that the contractor would thereby escape the restrictions placed upon the municipality in entering into contracts and would be in no danger of sustaining any loss thereby. In support of this contention appellant cites Town of Hartley v. Floete Lumber Company, 185 Iowa 861, 171 N. W. 183. In that case the town of Hartley had purchased certain materials from the lumber company and had issued its warrants therefor. One of the members of the town council was a stockholder, officer, and manager of the lumber company and took part in the transaction. The action was brought by the town to cancel the warrants because issued in payment of a contract entered into in violation of law and contrary to public policy. This court held that while the warrants should be canceled because issued in payment of a contract in which a member of the town council was interested, the town ought to pay the actual value of the goods furnished, less any profit to the lumber company. In the opinion it is stated that the rule of public policy which prevents the enforcement of such contracts is based on the thought that public officers must be held strictly to a performance of their duties and should not be allowed to do anything that might tempt them to betray their trust for the advancement of their own interests; that the temptation to violate their duty lies in the profit that may result therefrom; and that, if the profit be taken out of the transaction, there would be no reason why the city should not pay for the benefit which it had derived less any profit that might have been included in the contract. While the language of the opinion is rather broad, it must be borne in mind it was used in a discussion of the rules of public policy with reference to the facts presented by that case.

In Johnson County Savings Bank v. City of Creston, 212 Iowa 929, 932, 231 N. W. 705, 707, 237 N. W. 507, 84 A. L. R. 926, this court had under consideration the identical express contracts under which the material and services were furnished out of which it is here claimed that a benefit resulted to the

appellee city for which it should pay. Although the questions there discussed had particular reference to their application to the implied contract in fact which it was therein sought to establish and enforce, the opinion contains a very comprehensive statement of rules of public policy, as well as some of the reasons underlying them, and we think it not inappropriate at this time to call attention to that part of the opinion which says:

"The contracts in controversy were entered into without submission to competitive bidding. The statute is peremptory that, 'All contracts for the construction or repair of street improvements and for sewers shall be let in the name of the city to the lowest bidder by sealed proposals upon giving' prescribed notice. The statute is a prohibition upon letting such contracts in any other mode. Des Moines v. Gilchrist, 67 Iowa 210, 25 N. W. 136 [56 Am. Rep. 341]; District Township v. Dubuque, 7 Iowa 262, 276; Coggeshall v. Des Moines, 78 Iowa 235, 41 N. W. 617, 42 N. W. 650; Ebert v. Short, 199 Iowa 147, 152, 201 N. W. 793. * * * The city undertook to have the repairs in question made by contract. Having undertaken to have them made by contract, it was required to let the contract on competitive bidding. Dickinson v. Poughkeepsie, 75 N. Y. 65, 68. It is a general principle that a municipal contract entered into in violation of a mandatory statute, or a contract in opposition to public policy, is not merely voidable but void (Coggeshall v. Des Moines, 78 Iowa 235, 41 N. W. 617, 42 N. W. 650), and that no contract for services rendered or goods furnished pursuant thereto can be implied, *nor may the acceptance of benefits thereunder be made the basis of a liability by estoppel.* [Citing cases.]

"Municipal corporations are the creatures of the legislature. They have such powers to contract, and only such powers, as the legislature grants to them. *When the legislature withholds power to contract, or permits the exercise of the power in a given case only in accordance with imposed restrictions, the corporation may no more bind itself by implied contract than by the forbidden express contract. All persons dealing with a municipal corporation are charged with notice of the limitations upon its power. Those limitations may not be exceeded, defeated, evaded or nullified under guise of implying a contract. A municipal contract let without competitive bidding, when the stat-*

*ute requires competitive bidding, is void, and no recovery may be had either upon the purported express contract or upon an implied contract to pay the reasonable value of the services or material furnished thereunder."* (Italics are ours.)

After distinguishing between the case then before it and cases cited by the appellant therein, some of which have also been cited in this case, we further said:

"To sustain the plaintiff's contention would be to permit one to obtain from a municipality an illegal contract for doing work impossible of return and by performing it enable him to recover the reasonable value of the services and materials furnished—to nullify the law by evasion and indirection and to recover the value of work done under a contract which the law prohibits.

"Our cases cited and relied upon by plaintiffs, Marion Water Co. v. Marion, 121 Iowa 306, 96 N. W. 883; First National Bank v. Emmetsburg, 157 Iowa 555, 568, 138 N. W. 451, L. R. A. 1915A, 982; Sibley v. Ocheyedan Electric Co., 194 Iowa 950, 958, 187 N. W. 560; Humboldt County v. Dakota City, 197 Iowa 457, 465, 196 N. W. 53; Des Moines v. Horrabin, 204 Iowa 683, 687, 215 N. W. 967; Dunn v. Sioux City, 206 Iowa 908, 221 N. W. 571; Lee v. Ames, 199 Iowa 1342, 203 N. W. 790 (so far as applicable at all), *are those of the irregular exercise of conferred power or the exercise of power assumed by an unauthorized officer, not those of total absence of power, or the exercise of assumed power in defiance of the express command of the legislature.* The distinction appears from a consideration of Citizens' Bank v. Spencer, 126 Iowa 101, 101 N. W. 643. It is made in Iowa Electric Co. v. Winthrop, 198 Iowa 196, 198 N. W. 14.

"While a discussion of the reasons for denying recovery either on express or implied contract would be superfluous as they are fully set out in Head v. Providence Ins. Co., 2 Cranch [U. S.] 127, 156, 2 L. Ed. 229; Zottman v. San Francisco, 20 Cal. 96, 81 Am. Dec. 96, 100; Brady v. Mayor, etc., of New York, 16 How. Prac. [N. Y.] 432; Reichard v. Warren County, 31 Iowa 381; Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa 234, 253, 91 N. W. 1081, *we may say that the purpose of statutes requiring submission to competitive bidding is, among other things, to obviate the necessity of any inquiry into the question*

*of whether fraud or collusion was in fact resorted to. The law
endeavors to remove temptation by making prohibited acts void
regardless of motive."* (Italics are ours.)

The principles of public policy above set forth in Johnson
County Savings Bank v. City of Creston, were later referred to
and relied upon in C. W. Roland Co. v. Town of Carlisle, 215
Iowa 82, 244 N. W. 707. While it is true that in both of these
cases the principles of public policy were there considered in
connection with their applicability to an action to recover on
*quantum meruit,* we do not think that what was there said can
be altogether ignored in determining whether one who has en-
tered into an invalid contract with a municipal corporation may
yet be allowed to recover from the municipal corporation upon
the legal principle of unjust enrichment or quasi contract. Thus,
in the Johnson County Savings Bank case, we find it stated that
a contract with a municipal corporation in violation of a manda-
tory statute or in opposition to public policy is not merely void-
able, but void, that no contract for services rendered or goods fur-
nished pursuant thereto can be implied, *"nor may the accept-
ance of benefits thereunder be made the basis of a liability by
estoppel";* that all persons dealing with a municipal corporation
are charged with notice of the limitations upon its power, and
that such limitations may not be exceeded, defeated, evaded or
nullified, under guise of implying a contract; that to permit one
to enter into an illegal contract with a municipality and furnish
thereunder work which it would be impossible for the municipal-
ity to return, and to then allow a recovery from the municipality
for the value of the services and materials furnished, would
nullify the law by evasion and indirection and would permit a
recovery of the value of the work done under a contract which
the law prohibits; that the courts of this state recognize a differ-
ence between contracts with municipal corporations which are
invalid because of the irregular exercise of conferred power or
the exercise of power assumed by an unauthorized officer, and
contracts with municipal corporations in which there is a total
absence of power or the exercise of assumed power in defiance of
the express command of the legislature; and that *"the purpose
of statutes requiring submission to competitive bidding is, among
other things, to obviate the necessity of any inquiry into the
question of whether fraud or collusion was in fact resorted to."*
(Italics are ours.)

We do not think there is anything in either Town of Hartley v. Floete Lumber Company, 185 Iowa 861, 171 N. W. 183, or in Johnson County Savings Bank v. City of Creston, 212 Iowa 929, 231 N. W. 705, 237 N. W. 507, 84 A. L. R. 926, that supports the appellant's contention that, if the profit be taken out of the transaction, there is no reason founded on public policy for refusing to allow a contractor to recover for the benefit which a municipal corporation has derived from services or property furnished to it under an express contract which is invalid because *ultra vires*. In Woodward's work on the Law of Quasi Contracts, par. 161, p. 260, it is said:

"Whether or not quasi contractual obligation arises from the receipt of a benefit under a contract not in substance or in terms beyond the power of the corporation to enter into, but void because of non-compliance with a formal or preliminary requirement relating to its formation, is a question upon which the authorities differ. Much depends, it is submitted, upon the purpose of the requirement and the extent to which it is disregarded."

In the instant case, the express contracts entered into between the appellant and appellee were not only voidable, but void. They were not merely invalid because entered into irregularly, but they were entered into in defiance of the express legislative provisions which required competitive bidding. In entering into these contracts appellant was charged with notice of the limitations upon the power of the appellee to make such contracts and with the knowledge that it would be impossible for the appellee to return the materials and work furnished thereunder. Moreover, we think the circumstances, surrounding the entire transaction were such as to indicate that these invalid contracts were not entered into inadvertently or because of some mistake. Appellee specifically alleged fraud as a ground of defense to appellant's right to recover in this action, and in its argument sets out and numbers sixteen alleged badges of fraud. Appellant, on the other hand, contends that there is no evidence whatever in the record to establish fraud, and calls attention to the fact that much of the evidence introduced, from which it is claimed in appellee's argument that the existence of fraud may be deduced, was introduced under a stipulation that such evidence was admitted only in so far as it had a bearing on the

issue of prior adjudication. We have not the benefit of any argument on the part of appellee which meets this particular contention of the appellant. Some of the exhibits taken from the record in the prior litigation, especially the trial court's opinion and findings of fact, would appear to be quite important on the issue of fraud, but, in view of the stipulation under which this evidence was received, we are unable to see how any of it can be considered in connection with that issue.

But, even though the evidence falls short of establishing actual fraud, we think there is sufficient in the record in this case to indicate that the appellant's conduct in regard to the entire transaction was such that it should not be relieved from the difficulty in which it now finds itself, on the theory of unjust enrichment of the appellee. The contracts entered into were to place certain materials on the surface of streets that had been paved some years before and on which the old surface was cracked and disintegrated. These contracts were void because they purported to be contracts for oiling, whereas they were in fact contracts for repairing or resurfacing. Appellant contends that it should not be deprived of the right to recover for the benefit accruing to the city because it made a mistake in considering the work to be oiling instead of repairing. The record shows, however, that appellant had been engaged in the contracting business for a great many years, and, while it might be possible for one to believe that the first coat applied to the streets could be considered as oiling, it seems to us quite improbable that any one, and especially an experienced contractor, could consider the balance of the work to be done under these contracts as coming under the statutory provisions in regard to oiling streets. The second coat consisted of a bitulithic reflush coating composition, which, before being applied, was heated to a temperature of 250 to 350 degrees F., and after it had cooled this coat would leave a solid surface approximately one-quarter of an inch thick upon the streets. The proposal made by the appellant to the city stated that "if the city engineer or council deem it desirable, we will spread hot dry sand on the flush coated surface and roll same into the pavement, without any additional charge to the city," but neither the resolution of the city council accepting the proposition and directing the mayor and city clerk to contract for the work, nor the contracts themselves, made any reference to this sand coat. And, although the specifications,

which were made a part of the contract, appear to have been an exact copy of specifications prepared by Warren Brothers for use in connection with work such as was done upon the streets in this case, and although such Warren Brothers specifications contained a specific provision in regard to this sand coat, the paragraph of such specifications in which the sand coat was referred to was eliminated from the specifications under which the work was required to be done under the contracts in question. Appellee claims that all reference to this sand coat was omitted from the contracts and specifications in order to avoid the inconsistency of including a coat of sand in a contract for oiling, and appellant's attempted explanation of the omission does not appear to us to be very satisfactory. In our opinion, the second coat of bitulithic reflush coating composition and the coat of sand were so unusual and so foreign to the commonly understood and accepted meaning of oiling streets that the appellant must at least have had some doubt as to their being a part of the oiling for which the city could validly contract. We think it reasonable to conclude from the whole record that the appellant entered into the contracts which designated the work to be done as oiling instead of construction or repair, for the purpose of evading the statutory provisions which would have required competitive bidding in the latter case, whereas, in the former case, special assessments might be levied for oiling without the necessity of competitive bidding.

Moreover, even if the work included in these contracts might have been considered oiling, we think that, in entering into four contracts, one for each of the streets, instead of one contract covering the entire work, there was an evasion of the provisions contained in what is known as the Budget Law, under which a contract involving more than $5,000 would have to be submitted to competitive bidding. Appellant's proposal for all of this work was contained in one offer made to the city. The authorization of the work, the acceptance of the offer and the direction of the city council in regard to contracting for the work, were all contained in a single resolution of the city council. This resolution authorized the mayor and city clerk "to enter into contract with the Horrabin Paving Co." Instead of entering into one contract the mayor and city clerk entered into four separate contracts. Appellant claims that this was done for the purpose of financing, because it was easier to finance four separate con-

tracts than it would have been to finance one contract for the full amount. With this explanation we are not entirely satisfied. Both in designating the work to be done as oiling and in dividing the work into four contracts instead of including it all in one, we think the appellant could not have been unmindful of the fact that it was evading the provisions of the law in regard to competitive bidding.

We are now asked to allow the appellant, who by means of these invalid contracts avoided a compliance with the provisions of the statutes requiring competitive bidding, to recover on the ground that the city has received a benefit from the work done under the contracts, and should not be allowed to retain this benefit without paying for it. These contracts were not merely voidable because of some irregularity, but they were void because entered into in violation of express statutory provisions. The appellant knew that the materials and work furnished could not be returned. It was charged under the law with notice of the limitations on the city's power to make these contracts, and must have known, or at least suspected, that they were violative of both the letter and the spirit of the law.

In view of the reasons underlying public policy as applied to contracts of municipal corporations, to which reference has heretofore been made, it would, in our opinion, be contrary to public policy to allow one to thus evade provisions which have been enacted by law for the protection of the public, to foist upon the municipality materials and services that could not be returned, and then, when the evasion has been discovered and the contracts declared invalid, to recover on the theory that the municipality has received a benefit for which it should pay. Under the rules and principles of public policy announced in Johnson County Savings Bank v. City of Creston, supra, to allow a recovery by appellant in this case would be as truly a violation of public policy as it would have been to allow a recovery in that case and the cases therein cited. If a recovery be allowed under the facts of this case, we see no reason why contractors will not be encouraged to enter into contracts with municipal corporations which they realize are of very doubtful validity. If contractors may thus evade the provisions requiring competitive bidding, it is not at all improbable that they may be tempted by the prospect of big profits, without competition, to induce municipal officers to enter into unconscionable contracts

with them, on the theory that, even if such contracts be invalid, they may not be attacked; or, if attacked, some of the profits may still be saved by way of compromise; or, if the worst happen, and the contracts be held invalid, they may yet recover all but the profits of the undertaking. If such a rule be adopted, the prospect of exorbitant profits may become sufficiently alluring to offset the danger of any loss, if the only loss that might result would be the loss of profits.

Moreover, in this case, the contracts entered into contemplated that the expense of the work done should be charged to the property owners as special assessments for special benefits to their property. If the appellant be allowed to recover here, the taxpayers of the city generally will be required to assume the burden of paying for benefits to those whose property has been improved, and for which benefits it was contemplated that the owners of the property should pay. We think that the facts of this case bring it under the rules announced in Woodward's Law of Quasi Contracts, par. 161, pp. 258 and 261, wherein it is said:

"It is a generally accepted rule of policy that a municipal corporation is under no obligation to make restitution for a benefit received under an *ultrá vires* contract entered into by its officers, *in case such restitution would increase the burden of taxation upon the members of the municipality.* * * *

"If the irregularity (which renders the express contract invalid) is such as to deprive the municipality of the protection of a safeguard against the extravagance or corruption of its officers—*as a substantial failure to comply with a requirement that contracts shall be let to the lowest bidder after due publication of notice*—recovery should be denied." (Italics are ours.)

Many other matters have been discussed in the briefs and arguments, but, as the conclusion which we have reached is decisive of the case, it is unnecessary that we prolong this opinion by considering them.

The decree and judgment of the trial court is affirmed.—Affirmed.

KINTZINGER, C. J., and ALBERT, ANDERSON, POWERS, PARSONS, RICHARDS, and HAMILTON, JJ., concur.