**WEST HARRISON COMMUNITY SCHOOL DISTRICT, Petitioner-Appellee,**

v.

**IOWA STATE BOARD OF PUBLIC INSTRUCTION, Iowa State Department of Public Instruction, Respondent-Appellant,**

**and**

**William Clegg, Respondent.**

**No. 83–580.**

Court of Appeals of Iowa.

Feb. 21, 1984.

Thomas J. Miller, Atty. Gen., and Merle Wilna Fleming, Asst. Atty. Gen., for respondent-appellant.

Jack W. Peters of Stuart, Tinley, Peters, Thorn, Smits & Sens, Council Bluffs, for petitioner-appellee.

Heard by OXBERGER, C.J., and DONIELSON and SNELL, JJ.

DONIELSON, Judge.

Respondent State Board of Public Instruction ("Board") appeals from the district court's order reversing its decision disapproving the way in which petitioner school district ("district") awarded a contract for certain school repairs. The Board claims that it did not exceed its statutory review authority in disapproving the district's award as violative of the public bidding requirement of Iowa Code section 23.18 (1983). We reverse.

This case has its origin in the district's desire to reduce or eliminate the asbestos hazard in two of its school buildings. Schoolhouse repairs are governed by Iowa Code section 297.7 (1983) which in turn makes applicable the provisions of section 23.18, the competitive bidding statute. Section 23.18 provides in part as follows:

When the estimated total cost of ... repair of any public improvement exceeds twenty-five thousand dollars, the municipality shall advertise for bids on the proposed improvement ... and shall let the work to the lowest responsible bidder submitting a sealed proposal. However, if in the judgment of the municipality bids received are not acceptable, all bids may be rejected and new bids requested.

"Public improvement" is defined in section 23.1 as "a building or other construction work to be paid for in whole or in part by the use of funds of any municipality."

With this statutory background in mind, we proceed to the facts. In December of 1981, the district issued an invitation to a number of firms to bid on a project to control the threat posed by asbestos in the insulation used in the district's Modale and Mondamin schools. The lowest bids were submitted by William Clegg (sole proprietor of Sub-Let, an insulation firm in Algona)—$28,111.35 for the total removal and replacement of the asbestos from the two schools, and $13,041.80 for partial removal and subsequent encapsulation (a process by which the asbestos fibers are prevented from circulating through the air). On February 10, 1982, the district's school board met and received Clegg's bids as well as those from Advanced Insulation Services ("Advanced"), a Kansas firm, for $35,615 and $26,700 for total and partial removal respectively. Bids were also submitted by two other firms—The Judy Company (from Kansas City, Kansas) and Hamilton Insulation and Roofing (from Wesley, Iowa). The school superintendent was then authorized to negotiate further with Advanced

and The Judy Company regarding the possibility of doing the job with a spray-on cellulose encapsulation procedure. Although Clegg had initially recommended such a procedure, it was not included as a specification in the formal bid request. One month later, on March 10, the school board awarded the project to Advanced for the partial removal bid price of $26,700.

After Clegg was notified by the district that Advanced had been awarded the contract, his attorney contacted the superintendent and expressed his view that the district had not fully complied with the statutory bidding requirements spelled out above by not awarding the contract, the total cost of which exceeded $25,000, to Clegg, the lowest bidder, without determining that he was not in fact a "responsible bidder." As a result of this communication and after a discussion of the public bidding statute and its requirements, the school board on March 25 rescinded its contract award to Advanced and rejected all other bids previously submitted.

At the same time, the school board decided to call for two separate proposals, one for each of the two schools involved, to remove and encapsulate the asbestos in accord with various specifications including compliance with EPA regulations and guidelines. On March 29, the district informed Clegg by letter that it had rescinded the contract award to Advanced and told him that "[w]hen the administration has completed the specifications for each building, we [the district] will solicit separate proposals for each center." The district, however, did not solicit bids from Clegg on the revised projects; instead, encapsulation bids were received for the two "new" projects only from Advanced ($23,287 and $3,753) and two other firms, all of which were under $25,000. On May 12, the district accepted both bids from Advanced which has since completed all work in the two schools and has been paid in full.

On May 28, 1982, Clegg commenced his appeal of the district's decision to award the contract to Advanced by submitting, pursuant to Iowa Code section 290.1, an affidavit to respondent State Board of Public Instruction. Section 290.1 provides as follows:

Any person aggrieved by any decision or order of the board of directors of any school corporation in a matter of law or fact may, within thirty days after the rendition of such decision or the making of such order, appeal therefrom to the state board of public instruction; the basis of the proceedings shall be an affidavit filed with the state board by the party aggrieved within the time for taking the appeal, which affidavit shall set forth any error complained of in a plain and concise manner.

In the affidavit Clegg claimed the district violated the public bidding requirements of section 23.18 and wrongfully denied him a chance to bid on the "revised" projects.

The Board conducted a hearing and, on November 1, 1982, issued its ruling in Clegg's favor. The Board first dismissed as insubstantial the district's stated reasons for not considering Clegg's initial bids and not soliciting his bids the second time. Clegg had allegedly made some statements that were construed by certain district officials as meaning that he would try to do the work as cheaply as possible and so as to circumvent federal regulations. The Board gave these considerations little weight since the officials never confronted Clegg with their concerns and never gave any indication that they were anything more than mere suspicion. The Board also rejected the district's proffered reasons for splitting the one original project into two and specifically held that the district did so in order to preclude the necessity of soliciting Clegg's bids and submitting the work to public bidding in general (since each of the two projects would cost less than $25,000).

The Board noted in passing that while the district generally has discretion in determining whether construction or repair work is to be done as one project or two or more, it may not divide such a project for the purpose of avoiding the requirements of the public bidding statute. Finally,

while admitting that Clegg would be unable to obtain any tangible relief in this case since the projects had already been completed, the Board concluded by holding that, under the circumstances of this case, the district split up the repair project "for improper, inadequate and indefensible reasons."

On November 18, 1982, the district filed this petition for judicial review of the Board's decision, alleging that it was in violation of statutory provisions in that there is no requirement that a school district must combine separate projects into one for purposes of the public bidding statute. The district court, on April 22, 1983, entered its order holding that chapter 23 of the Iowa Code permits separate contracts and that the district had the right to treat the repair project here as two separate contracts. In doing so, the court did not consider the chain of events leading up to the first bidding procedure. The court concluded that the Board reached an incorrect conclusion of law, reversed its decision, and affirmed the district's authority to make separate contracts in this case. The Board brought this appeal.

■ The only issue in this appeal is whether the trial court was correct in holding the Board exceeded its statutory authority in holding that, under the particular circumstances of this case, the district split the project into two separate contracts for an improper reason; i.e., to avoid the applicability of the public bidding statute, Iowa Code section 23.18. Our review of the Board's decision, like that of the district court, is limited by the provisions of Iowa Code section 17A.19(8). In a challenge to an action taken by the State Board or Department of Public Instruction, the court on judicial review considers the propriety of only that agency's action and not the underlying action taken by the local school board. *Keeler v. Iowa State Board of Public Instruction*, 331 N.W.2d 110, 111 (Iowa 1983). In doing so, however, we certainly are not foreclosed from looking at the factual background in order to determine what went into the agency's decision-making process. "As a general rule, we are reluctant to interfere with a local government's determination of who is the lowest responsible bidder, absent proof that the determination is fraudulent, arbitrary, in bad faith, or an abuse of discretion." *Istari Construction, Inc. v. City of Muscatine*, 330 N.W.2d 798, 800 (Iowa 1983). Although *Istari* involved the public bidding requirements of Iowa Code chapter 384, we believe the principle cited to be equally applicable to the same requirements found in chapter 23.

■ The State Board in essence concluded that the district abused its discretion in splitting the project into two separate contracts after previously treating it as one. We agree and hold that the Board was authorized to reach such a conclusion. The district court, in holding in the district's favor, ignored everything that happened before the district decided to split the project and ruled that chapter 23 allows separate contracts. Certainly, no one contests the fact that a school district need not consolidate all construction or repair work into one contract for competitive bidding purposes. The Board's ruling concedes as much: "The position we express here should not be misunderstood to preclude the division of a construction or repair project for sound and defensible reasons."

We believe it is necessary to examine the entire chain of events leading up to the district's decision and not look only at the latter in isolation. As a result of the district's first solicitation of bids for what was then considered by everyone to be only one project, Clegg was the lowest bidder. The district, however, awarded the contract to Advanced without making a determination that Clegg was not a "responsible bidder." It was only after being informed by Clegg's attorney of the public bidding requirements and the fact that the repair project was subject to those requirements that the district rejected all bids, split the project into two contracts (each amounting to less than $25,000 and thus exempt from public bidding), and did not solicit bids from Clegg. Both contracts were ultimately

awarded to Advanced—the same firm which was previously awarded the single contract—at a total price approximately $200 more than its previous consolidated bid. We adopt the Board's finding and conclusion:

> In summary, it is clear ... that District officials divided a "construction and repair" project, as those terms are used in Section 297.7, The Code 1981, for the purpose of precluding a prospective contractor from participating in any phase of the project.
>
> \* \* : \* \* \*

The District Board has asserted that it has the right to determine whether "construction and repair" work should be done as one project or two, and generally we would agree. Where we disagree is when such a project is divided without substantial justification and for the apparent purpose of circumventing statutory limitations and restrictions on the awarding of contracts. The Board certainly knew at the time it rejected all bids in the first bidding round that the total cost of the project would likely exceed the $25,000 statutory limitation of its authority to contract outside the bidding process.

An analogous situation was presented in *Horrabin Paving Co. v. City of Creston*, 221 Iowa 1237, 262 N.W. 480 (1936). In that case, the city accepted the contractor's proposal to repair four streets. The parties entered into four separate contracts—one for each street. The supreme court rejected this attempt to evade the provisions of the competitive bidding statute and denied recovery to the contractor on the contracts.

 Furthermore, the public best interests would not be served by foreclosing the use of Iowa Code chapter 290 ("Appeal from decisions of boards of directors") in situations such as here where a school board operates in questionable good faith, considering all the relevant facts. There are innumerable situations in which bidding procedures could be implemented merely to circumvent the competitive bidding proce-

dure set out in the statutes. We do not propose to so limit the applicability of chapter 290 in the firm belief that the legislature did not intend such a limitation.

We therefore reverse the order of the district court and reinstate the findings and conclusions of respondent Board. In doing so, we say nothing about whether Clegg was entitled to the initial contract or whether he was a "responsible bidder" for purposes of section 23.18. We merely affirm the Board's conclusion that, under the particular facts and circumstances of this case, the district divided the repair project for "improper, inadequate and indefensible reasons."

REVERSED.